WILLIAM L. E. O'BRYAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 110430.   Promulgated May 18, 1943.

*Arthur H. Kent, Esq.*, and *C. Wm. Wittman, Jr., C. P. A.*, for the
petitioner.

*Harry R. Horrow, Esq.*, for the respondent.

1138

OPINION.

MELLOTT, *Judge:* The precise date that the "Separation Agreement" was entered into is important only in connection with the deficiency for 1936. Respondent, relying primarily upon the statement in writing made by petitioner's representative, determined that it had been signed in 1935 and hence was operative throughout the year 1936. Petitioner undertook to show that it was not signed until sometime between March and September 1936. The evidence, as petitioner admits upon brief, is scanty. Petitioner, testifying as a witness, stated he "couldn't say positively" when he signed the agreement, adding that, to the best of his recollection, it was "between February and the fall of 1936." The document furnishes no clue as to when it was signed and the only other evidence on the subject was hearsay. Under the circumstances, therefore, we have felt impelled to limit our finding to the bare fact that the agreement was signed at some time in 1935 or 1936. Since petitioner has not proved it was in effect for only part of the year 1936, respondent's determination that it was in effect throughout the year is approved.

The effect of the separation agreement presents a more important and difficult question. Respondent insists that although it did not transform the community property of the spouses into separate property it did operate to convert the income thereafter earned into separate income. As to the portion of the income derived from property—dividends, rents, and royalties—he points out that the record does not show what part, if any, of it had been acquired by the husband after July 29, 1927.[1] He contends that in the absence of such showing his determination that the income was taxable to the husband should not be disturbed. *Hirsch* v. *United States*, 62 Fed. (2d) 128. Petitioner denies that the agreement had any such effect. He argues that it would be unreasonable to conclude that the wife had made a definitive surrender of her marital property rights, including her vested right to one-half of her husband's future earnings, unless specific and unambiguous language to that effect were used; that the language of the contract is not definite, specific, and unambiguous; that the wife continued to claim a community property interest until settlement just preceding

---

[1] The effective date of the amendment to the California Civil Code which became section 161 (a) Civil Code Deering and which defines the interests of the husband and wife in community property during the continuance of the marriage relation as "present, existing and equal." Since petitioner first became domiciled in California in 1932, the date seems to have no pertinence here.

the entering of the interlocutory decree of divorce; that even if the original intent of the agreement had been to eliminate community property for the future—which he denies—it had been tacitly rescinded by the conduct of the parties, the wife demanding and the husband paying more than the specified amounts; and, finally, that the parties subsequently dealt with each other upon the basis that the great bulk of petitioner's estate still consisted of community property, as evidenced by the fact that just before the interlocutory decree was entered petitioner agreed to pay his wife $13,500, an amount representing the value of approximately one-half of all property in which he had an interest.

The parties do not disagree upon fundamentals. Generally a husband, domiciled in California, is required to include in his separate return only one-half of his earnings, the other half being taxable to his wife even though she was not, and never had been, a resident of that state and regardless of the fact that she had never lived with him in that state or been requested by him to do so. *Herbert Marshall*, 41 B. T. A. 1064; *Paul Cavanaugh*, 42 B. T. A. 1037; affd., *Commissioner* v. *Cavanaugh*, 125 Fed. (2d) 366. A husband and wife may contract with each other; and they have the power to enter into an agreement the effect of which will be to transform previously acquired property into community (*United States* v. *Goodyear*, 99 Fed. (2d) 523), or into the separate property of one or the other (*Woodall* v. *Commissioner*, 105 Fed. (2d) 474), or to convert future earnings of either from the status of community property to that of separate property. (Sec. 158, Civil Code of California, Deering.) No particular form of agreement is necessary, *Estate of Joe Crail*, 46 B. T. A. 658, and cases cited, and, if one is made, it will be effective to change the incidence of Federal income tax liability (*Helvering* v. *Hickman*, 70 Fed. (2d) 985; *Somerville* v. *Commissioner*, 123 Fed. (2d) 975), provided its terms are such as to indicate an intention to effectuate a change in status. *Sherman* v. *Commissioner*, 76 Fed. (2d) 810. Cf. *Boland* v. *Commissioner*, 118 Fed. (2d) 622, affirming 41 B. T. A. 930.

Did the separation agreement have the effect of transforming petitioner's future earnings from community to separate property? The contentions of the parties have heretofore been outlined. Both discuss upon brief *Sherman* v. *Commissioner* and the other cases cited *supra*. The *Sherman* case exemplifies and applies well established principles of contract law. Two agreements had been executed by a husband and wife providing that the husband should make certain payments monthly for the support of the wife and children. Neither contract dealt specifically with the subject of the future earnings of the husband; but the wife testified that when she entered into them she intended thereby to make a complete division of her property rights

with her husband, terminating her community interest in his earnings and salary thereafter. It was stipulated that the husband would testify to the same effect. The court held that the testimony must be disregarded and, since there was nothing in the agreements directly or indirectly dealing with the subject of the future earnings of the husband or wife, that their rights were fixed by the law of their domicile. It therefore concluded that since the wife had a vested interest in the husband's earnings one-half was subject to tax as her income. Cf. *Van Every* v. *Commissioner*, 108 Fed. (2d) 650.

Respondent recognizes that the separation agreement did not effect a division of all the property, which petitioner then owned, between him and his wife. He insists, however, that the agreement did have the effect of transforming petitioner's future earnings from community to separate property. If the agreement did have such effect, then the respondent did not err in treating all of the income as belonging to petitioner.

The first paragraph of the operating portion of the agreement provided that the parties should "be free from interference, authority and control by the other as fully as if he or she were sole and unmarried." Considered in its context and especially in conjunction with the inducement clauses, it might be reasonable to conclude that the wife, in return for her "maintenance and support * * * during life," was willing to consent to petitioner's earnings being as free from her interference and authority as if he "were sole and unmarried." It need not be decided, however, that this language was sufficient to change petitioner's earnings from community to separate property. The remaining portion of the clause likewise has some bearing. Under it the wife specifically agreed that petitioner in the future should "conduct, carry on and engage in any employment, business or trade which to him * * * [should] seem advisable for his * * * own, sole or separate use and benefit without and free from any control, restraint or interference, direct or indirect, by [her] * * * in all respects as if * * * [he] were unmarried." Any lingering doubt as to the intentions of the parties is therefore dispelled. The conclusion that they intended to transform the husband's future earnings from community to separate property, the wife being content to accept, in lieu of a community interest in his future earnings, an assured income of $150 per month, plus any taxes levied upon it by the Federal or local governments, is inescapable. We are therefore of the opinion and hold that the earnings of petitioner during the taxable years were his separate property.

In reaching the above conclusion, we have not overlooked the other contentions of petitioner, heretofore alluded to but not dis-

cussed in detail. His suggestion that the agreement had been tacitly rescinded by the parties, even if the original intent had been to eliminate community property for the future, is neither sound in principle nor supported by evidence. The mere fact that he sent his wife more than he had agreed to send her, even if it be assumed that she had "demanded" more, does not abrogate the contract or indicate it had been rescinded. Moreover the implication from his own testimony is that the extra amounts were sent to enable her to support her relatives, to buy medicines for them, and to make needed repairs upon their home. In other words, if his own statements be relied upon, he was animated by altruistic impulses rather than a feeling that the contract had been rescinded. Nor does the fact that he chose to convey additional property to his wife in 1942, just prior to the entering of the interlocutory decree of divorce, aid in determining the force and effect of the prior separation agreement. Indeed the fact that the parties incorporated in their later agreement a provision "supplanting" the earlier agreement is a strong circumstance indicating they felt it had not been rescinded.

What has been said is dispositive of the sole issue arising in connection with the deficiencies for 1938 and 1939. Conclusion has been reached and it is now held that respondent committed no error in determining the deficiencies for those years. The remaining issue, applicable only to the years 1936 and 1937, will now be considered.

The deficiencies for 1936 and 1937 were determined more than three years but less than five years after the returns were filed. They were not timely under section 275 (a) of the Internal Revenue Code [2] and may be upheld only if the facts justify application of section 275 (c).[3]

The legislative history of section 275 (c) is set out in *Estate of C. P. Hale*, 1 T. C. 121, and need not be repeated. Stated generally, it was enacted for the protection of the revenue, giving the Commissioner five years in which to determine a deficiency where a taxpayer omitted from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of the gross income stated in the return. The question therefore is: Was such omission made by petitioner?

---

[2] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
[3] (c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

The returns for 1936 and 1937 are in evidence. The first-mentioned forms the better basis for petitioner's argument. It reports, under the general heading of "Income," item I, salaries, wages, commissions, fees, etc., as follows:

|  | Amount Received | Expenses Paid |
|---|---|---|
| O'Bryan Bros., Inc. | $10,250<br>20,500 | $1,029.50<br>2,059.00 |

In the column opposite item I the difference between the amount received and the expenses paid, or $9,220.50, is shown. The "Total Income in Items 1 to 11" is shown as $9,591.50.

Petitioner argues that he reported the entire amount of his earnings *qua* earnings and deducted the one-half reported in the returns filed for his wife; that he was not negligent and the Commissioner was not misled; that the section was not intended to apply where a full disclosure of the receipt of income is made in the return; and that the broad interpretation placed upon section 275 (c) by the Commissioner "would go far beyond protection against failure to disclose receipt of doubtful items and would penalize the taxpayer because of an honest and reasonable mistake of law or of fact, with respect to which his return put the Commissioner on notice." He also urges that the *Hale* case *supra*, was incorrectly decided and that the conclusion reached is contrary to the legislative intent disclosed in the Committee reports.

The last contention has been given serious consideration, but is believed to be unsound. The statute, as petitioner correctly points out, speaks in terms of omission from gross income. We were of the opinion that the taxpayer in the *Hale* case had omitted from gross income two amounts aggregating $2,176.70, although they had been shown in a dividend schedule attached to the return and erroneously designated capital. That view is adhered to. We therefore respectfully decline to overrule the *Hale* case or to suggest that it should be limited in its application. Decision in the instant proceeding might well rest upon it and *American Liberty Oil Co.*, 1 T. C. 386, since petitioner obviously included in his gross income but 50 per centum of his earnings; but his other contentions will be considered.

Whether petitioner was negligent or respondent was misled seems to be immaterial under the statute. The criterion is omission from gross income. Nor may respondent be denied the benefit of the five-year statute merely because of an honest mistake of law or of fact by the taxpayer. The statute makes no such exception. The legislative history indicates that Congress intended the statute to apply "in the case of a taxpayer who makes an honest mistake." The report of the

Senate Finance Committee[4] states that as to such a taxpayer "it would be unfair to keep the statute open indefinitely," which would have been done under the bill passed by the House. The Senate version was accepted in conference.[5] If the legislative history is to be considered (and in this connection it may be pointed out that the section does not seem to be ambiguous), it appears to be immaterial whether the income was, or was not, omitted because of an honest mistake of law or of fact.

Petitioner suggests that the section should not be applied when a taxpayer has made "a full disclosure" in his returns. That question need not be decided in this case; for in our judgment no full disclosure was made. No information was given in the returns showing that petitioner and his wife had been separated for years, that he was signing and filing returns for her though not specifically authorized to do so, or that the agreement making the earnings his separate income had been executed. When these facts were ascertained by the respondent, more than three years but less than five years after the returns were filed, he promptly determined the deficiencies in tax. In our judgment section 275 (c) is applicable. We therefore conclude and hold that respondent committed no error in determining the deficiencies in tax for the years 1936 and 1937.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

HARRON, *J.*, dissenting: I respectfully dissent from the majority view under the first issue. The separation agreement which the parties executed in 1935 or 1936 was a separation agreement by its terms and did not purport to accomplish an ending of the community property of the parties then. It appears to me to be unsound to construe the agreement as an expression of intention of both parties to terminate the community interests of the spouses in a part of that which ordinarily constitutes community property, namely, future earnings. That there was no such intention at the time the separation agreement was executed is demonstrated by the execution on October 5, 1942, of the "Property Settlement Agreement" which stated that it was the intention of the parties to settle and adjust their community and property rights. That agreement purported to adjust the interests in all property. The statement in the 1942 agreement that it was "in full settlement of all property rights past, present and future," and that all property acquired by either party from and after the date thereof should be the separate property of each, negates the theory that at some time prior to October 5, 1942, the parties had effected a

[4] Pp. 43–44, S. Rept. 558, 73d Cong., 2d sess.
[5] Report of Conference Committee, H. Rept. 1385, 73d Cong., 2d sess.

separation of property interests, to wit, in 1935 or 1936. I believe it is incorrect to hold that petitioner's *earnings* were his separate property after the execution of the separation agreement under facts which indicate that other kinds of property were not to be the separate property of the spouses.