ELSIE C. EMERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5722. Promulgated October 31, 1945.

*Robert A. B. Cook, Esq., J. N. Welch, Esq.,* and *Lawrence E. Green, Esq.,* for the petitioner.
*James T. Haslam, Esq.,* for the respondent.

1008

OPINION.

BLACK, *Judge*: The issues presented are (1) the determination of the extent, if any, to which petitioner is taxable for the years 1939, 1940, and 1941 on the income of the five trusts created by her husband in 1937, and (2) whether the assessment of the deficiency for 1939 is barred by the statute of limitations. The answer to (2) depends upon our solution of (1).

The parties agree that the income of the five trusts before any deduction for any distribution to beneficiaries for the years 1939, 1940, and 1941 was $28,943.62, $25,837.52, and $44,949.46, respectively. In her returns for 1940 and 1941 petitioner reported $7,837.53 and $26,-

177.01 of the respective income of the five trusts for those years and there is no issue involved as to those amounts. Petitioner's principal contention is that the $18,000 paid to her under paragraph 1 of the five trusts for each of the three years in question was "property acquired by gift" and was exempt from taxation to her under section 22 (b) (3) of the Internal Revenue Code;[2] *Burnet* v. *Whitehouse*, 283 U. S. 149; and *Helvering* v. *Pardee*, 290 U. S. 365. Petitioner's next contention is that the $10,943.62 of trust income for 1939 which was reported by the fiduciary as "set aside for religious, charitable, and educational purposes" is not income to petitioner because of petitioner's alleged renunciation of any right to receive such income. These two contentions, together with the above amounts reported by petitioner for 1940 and 1941, take care of all of the income of the five trusts except $772.45 for the year 1941. Petitioner has apparently abandoned any assignment of error made with respect to this amount of $772.45, for in her brief, after stating the principal issue relative to the $18,000 paid to her under paragraph 1 of the five trusts, she says: "This is the only issue with respect to the taxable years 1940 and 1941."

The respondent contends that, because of the power vested in petitioner under paragraph 5 of the trusts "to cancel or revoke this trust at any time in whole or in part," petitioner possessed the equivalent of ownership of all the corpora of the trusts and as such owner she is taxable on all of the income therefrom, after deducting all contributions to charity, subject to the 15 percent limitation.

We would agree with both of petitioner's contentions heretofore mentioned if it were not for the power vested in petitioner under paragraph 5 of the five trusts. Disregarding for the moment paragraph 5, the $300 per month payable to petitioner under paragraph 1 of each of the trusts was payable to her at all events and would not be a distribution of income to her but rather a discharge of a gift, and, as such, exempt from taxation to her under section 22 (b) (3), *supra*, and the cases relied upon by petitioner. See also *Coleman* v. *Commissioner*, 151 Fed. (2d) 235. Likewise, the $10,943.62 of trust income for 1939 which was reported by the fiduciary as "set aside for religious, charitable, and educational purposes" would not be income to petitioner, but would be deductible by the fiduciary

---

[2] SEC. 22. GROSS INCOME.

* * * * * *

(b) Exclusions from Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * * *

(3) Gifts, bequests, and devises.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income).

under section 162 (a) of the code,[3] since the respondent determined in the notice of deficiency that the contributions were "actually paid" by the fiduciary. We think, however, that the respondent's determination must be sustained in its entirety by virtue of the power vested in petitioner under paragraph 5 of the trusts. Because of such power, we think the instant case is controlled by such cases as *Richardson* v. *Commissioner*, 121 Fed. (2d) 1; *Ella E. Russell*, 45 B. T. A. 397; *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784; and *Mallinckrodt* v. *Nunan*, 146 Fed. (2d) 1; certiorari denied, 324 U. S. 871; rehearing denied, April 30, 1945. Petitioner in her brief has attempted to distinguish these cases, but we do not think they are distinguishable. Petitioner urges as an authority in her favor *Plimpton* v. *Commissioner*, 135 Fed. (2d) 482. We think, however, that there is a material distinction between the *Plimpton* case and the four cases referred to above. In the *Plimpton* case the taxpayer-beneficiary could have only certain income of the trust distributed to him "in the discretion of the trustees," of which he was only one. The court pointed out the distinction in that case from such cases as *Richardson* v. *Commissioner*, *supra*, in the following language:

> The case of *Richardson* v. *Commissioner* * * *, upon which the govern ment relies, is clearly distinguishable. In that case it was held that the income of a trust created by a wife with funds given to her by her husband was taxable to the husband although he was not the settlor. But the husband there had an unqualified right to revoke the trust and take all the funds himself, including accumulated income, which is not the case here. These features are important and make the Richardson case clearly distinguishable from the one before us.

In the instant case and in the four cases referred to above the taxpayer-beneficiary, acting alone and without the concurrence of any one else, had the right to acquire either the corpus or income of the trust at any time. In *Richardson*, it was the right to "cancel and terminate" the trust agreement; in *Russell*, it was the right to receive "such part or parts or the whole of the principal * * * as she may, by writing lodged with the Trustees, direct"; in *Jergens*, it was the "power to alter, amend, or modify the trust as he saw fit, or to revoke it in whole or in part, with the single exception that he did not

---

[3] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit.

have power to make the proceeds of the insurance payable to his estate"; in *Mallinckrodt, Jr.*, it was "to pay the residue of such annual trust income to petitioner during his life, upon his request"; and in the instant case it was the "full power and authority to cancel or revoke" as provided in paragraph 5 of the trust instruments, set out in full in our findings. We think these cases are controlling here and that petitioner is taxable on all of the income of the five trusts in the manner determined by the respondent. The assessment of the deficiency for the year 1939, as determined by the respondent, is not barred by the statute of limitations, for the reason that the amount of unreported income taxable to petitioner is in excess of 25 percent of the reported gross income and the notice of deficiency was mailed to petitioner within five years after her return was filed. See sec. 275 (c), I. R. C., and *O'Bryan* v. *Commissioner*, 148 Fed. (2d) 456, affirming 1 T. C. 1137.

*Decision will be entered for the respondent.*