Herman Marcus v. Commissioner. Isadore Marcus v. Commissioner.
Marcus v. Commissioner
Docket Nos. 22821, 22837.
United States Tax Court
1951 Tax Ct. Memo LEXIS 173; 10 T.C.M. (CCH) 651; T.C.M. (RIA) 51211; June 29, 1951
*173 E. L. Brunini, Esq., and A. J. Brunini, Esq., 810 First Nat. Bank Bldg., Vicksburg, Miss., for the petitioners. Stanley B. Anderson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in the income tax liability of the petitioners as follows: Petitioner
Docket No.
1943
1944
1945
Herman Marcus
22821
$2,926.57
$1,612.17
$5,921.68
Isadore Marcus
22837
2,949.97
1,628.27
5,952.56 The year 1942 is involved also because of the provisions of the Current Tax Payment Act of 1943. The only question is whether the wives of the petitioners were members of a partnership during the years 1942 to 1945, inclusive. The petitioners are members of a partnership known as Marcus Furniture Company. The respondent has determined that their wives are not members of the partnership and has included in the income of each one of the petitioners the partnership income which was reported by the wife of each petitioner. The petitioners filed their returns for the years in question with the collector for the district of Mississippi. The record in this proceeding consists *174 of oral testimony and various exhibits. Findings of Fact Samuel Marcus, the father of the petitioners, was engaged in the retail furniture business in Vicksburg, Mississippi, as sole proprietor of the Samuel Marcus Furniture Company. The petitioner, Isadore Marcus, began work in the business in 1915, and his brother, Herman Marcus, began work in the business in 1923 or 1924. Both petitioners worked for their father on a salary basis. In 1927 Isadore Marcus married Rosalie Preis. In 1935 Herman married Reva Klein. On August 5, 1940, Samuel Marcus, the father of the petitioners, died. His will provided that the petitioners should be the executors of his estate. Under the will, Samuel Marcus provided for a stipulated monthly payment to be made to the petitioners' mother, which was to be a charge against all the real estate owned by the decedent. The will also provided that at the petitioners' discretion a payment of $200 per month should be made to their sister, Frieda Ahrens. After providing for specified legacies to the petitioners, the will devised to them certain residences which they had been occupying as their homes. The residue of the estate was bequeathed, share and share *175 alike, to the petitioners. The residuary estate included the retail furniture business which had been conducted by Samuel Marcus and 16 parcels of real property. Four of the parcels comprised the land and buildings in which the furniture business had been carried on, and the other 12 parcels consisted of properties which had been rented to tenants by Samuel Marcus. All of the real property was carried on the books of the business, and the income from the properties rented was also recorded on the books of the business. Prior to the death of their father, the petitioners had been the active managers of the Samuel Marcus Furniture Company. After the death of Samuel Marcus, the petitioners continued to carry on the retail furniture business. On May 17, 1941, Isadore Marcus and Herman Marcus executed a deed in which they conveyed to their respective wives an undivided one-fourth interest in the real property and in the retail furniture business which they had inherited from their father, with the exception of the cash, accounts and notes receivable, stocks and bonds of the business which were needed to pay the tax on the estate of Samuel Marcus. The deed was dated back to January 1, 1941. On *176 May 24, 1941, it was recorded with the clerk of Warren County, Mississippi. At the same time that the petitioners executed the above deed, they also executed an agreement of partnership with their wives. This agreement provided: "1ST. The partnership shall be conducted under the firm name of 'Marcus Furniture Company.' "2ND. Said business shall continue the present business heretofore conducted under the name of S. Marcus during his life and continued after his death by Isadore Marcus and Herman Marcus, the place of business being located at 1210 Washington Street, in the City of Vicksburg, Warren County, Mississippi, and said business shall have the right and privilege of adding additional lines or activities as from time to time may be determined. "3RD. Isadore Marcus and Herman Marcus shall be general partners in interest, with all of the powers, duties and liabilities given and imposed by law on general partners; and that Rosalie Marcus and Reva K. Marcus shall be limited partners in said business with no liability thereunder other than the contribution of the amount of capital contributed and invested by them in said business; all of said partners being residents and citizens *177 of the City of Vicksburg, Warren County, Mississippi. "4TH. That Rosalie Marcus has contributed and invested in said business assets of the total value of Twenty-two Thousand, Nine Hundred Seventy-seven and 22/100 ($22,977.22) Dollars, and as such limited partner assumes no liability for or on behalf of said partnership beyond the amount of capital invested by her, as aforesaid. "5TH. That Reva K. Marcus has contributed and invested in said business assets of the total value of Twenty-two Thousand, Nine Hundred Seventy-seven and 22/100 ($22,977.22) Dollars, and as such limited partner assumes no liability for or on behalf of said partnership beyond the amount of capital invested by her, as aforesaid. "6TH. That said partnership shall commence as of this date and shall continue for a period of twenty-five years unless terminated by operation of law or mutual consent of the partners prior thereto. "7TH. That each of the partners shall be entitled to and shall receive one-fourth of the net profits of said business, but the general partners shall be entitled to receive salaries to be agreed upon from time to time, and which said salaries shall constitute an expense in the operation *178 of said business in reaching the net profits distributable to the partners. "8TH. That the general partners shall devote their entire time to the said business and shall, during the continuance of said partnership, engage in no other business requiring any of their time or attention. "9TH. This limited partnership is bound by the terms of Chapter 132 of Mississippi Code of 1930 and any amendments thereto." This agreement was also dated back to January 1, 1941, and recorded with the county clerk on May 24, 1941. After deduction of the cash, accounts and notes receivable, stocks, and bonds, the net assets of the business, at the time that the partnership agreement was executed, amounted to $91,908.85, and one-fourth of the foregoing amounted to $22,977.22. The property which the petitioners had inherited from their father and which was made part of the deed which they executed on May 17, 1941, was included in the assets of the business. At the same time that the deed to the property and the articles of partnership were executed and as part of the same transaction, each of the parties to the partnership agreement executed a will. In the will which Rosalie Marcus executed, she *179 designated her husband as her heir. After the execution of the partnership agreement, the petitioners continued to carry on the business as they had done previously. No change in the present or future management of the business was contemplated. All decisions with respect to the conduct of the business were made by the petitioners. Rosalie and Reva did not participate in the management or control of the business. Capital accounts were not set up for any of the purported partners. No withdrawal accounts were set up for either Rosalie or Reva in 1941; all withdrawals in that year were charged to the accounts of the petitioners. In January 1942 personal withdrawal accounts were opened on the books for the wives of the petitioners. Withdrawals which were made by any of the alleged partners were debited to each individual's drawing account and were charged to the investment account of the business at the end of the year. The books of the partnership show the following withdrawals from 1942 through 1945: 1942
1943
1944
1945
Herman Marcus
$9,272.32
$13,797.09
$10,869.46
$8,209.47
Isadore Marcus
9,874.36
15,078.98
10,505.08
8,656.01
Reva K. Marcus
2,019.41
6,947.51
6,982.76
6,566.46
Rosalie P. Marcus
2,302.68
6,980.06
6,717.99
5,542.83
*180 Neither Rosalie nor Reva had the authority to sign checks, and they drew on the income of the business only insofar as they were permitted to do so by the petitioners. When either of them wanted money from the business, she made a request to one of the petitioners for it, and he would sign a check for her. The money which was withdrawn by the wives during the years in question was spent primarily to pay the ordinary household bills of their respective families. None of the money withdrawn was ever deposited in a bank, although Rosalie Marcus, at least, had her own bank account. The petitioners' wives also made withdrawals for the purpose of paying state and Federal income taxes and to pay their club dues. In addition, the petitioners twice decided in 1943 that United States savings bonds should be purchased in the names of their respective wives. Accordingly, each wife was debited with a withdrawal of $1,000 in April 1943, which was used to purchase United States savings bonds which stand solely in their names; and in November 1943 each wife was debited with a withdrawal of $2,500, which was used to purchase United States savings bonds which stand in their names and in the names *181 of their respective husbands. Rosalie and Reva were not free to enjoy the fruits of the enterprise, and they never exercised any dominion or control over the enterprise. The petitioners did not in good faith and acting with a business purpose intend to join together with their wives in the present conduct of the partnership during the years in question. The petitioners filed their income tax returns for the years 1942, 1943, and 1944 as follows: Gross Income
Gross Income
Reported by
Reported by
Year
Date of Filing
Herman Marcus
Isadore Marcus
1942
Mar. 13, 1943
$ 6,778.54
$ 6,641.79
1942 (amended return)
Jan. 11, 1944
10,228.54
10,091.79
1943
Mar. 15, 1944
12,107.81
12,107.81
1944
Mar. 15, 1945
10,793.85
10,793.86
The correct gross income of the petitioners for each of the years 1942, 1943, and 1944 is as follows: Year
Herman Marcus
Isadore Marcus
1942
$14,479.32
$14,479.32
1943
18,221.25
18,221.26
1944
15,537.86
15,537.87
On February 8, 1949, the Commissioner mailed a deficiency notice to each of the petitioners for the years in question. The petitioners each omitted from their gross income *182 stated in their returns for the years 1942, 1943, and 1944 an amount properly includible therein which was in excess of 25 per cent of the gross income so stated. Opinion The primary issue in this proceeding, as in all family partnership cases, is whether the petitioners acting in good faith and with a business purpose really and truly intended to join together with their wives in the present conduct of the partnership known as the Marcus Furniture Company during the years in question. Commissioner v. Culbertson, 337 U.S. 733. Contrary to the contention of the petitioners, we have found as an ultimate fact that the petitioners did not so intend to join with their wives in the conduct and operation of the business. This conclusion is based on an examination of all the relevant facts and circumstances present in this proceeding and specified by the Supreme Court as factors to be taken into consideration. Such facts and circumstances include: "the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual *183 control of income and the purposes for which it is used * * *." Commissioner v. Culbertson, supra, at 742. See, also, Belcher v. Commissioner, 162 Fed. (2d) 974, 976, affirming 7 T.C. 182. Evidentiary factors strongly indicative of the absence of good faith or the reality of the participation by the wives in the partnership are whether or not they were free to enjoy the fruits of the enterprise and whether or not dominion and control were exercised by them over the property. Ginsburg v. Arnold, 185 Fed. (2d) 913 (C.A. 5, 1950). Unlike the children of the taxpayer in the Ginsburg case, however, the evidence in this proceeding shows that Rosalie and Reva were not free to enjoy the fruits of the enterprise and that they did not exercise dominion or control over the property. Neither had the authority to sign checks for the business. When either of them desired money from the enterprise, it was necessary that she first ask one of the petitioners for it, and he would then make out a check to her. The requests by the wives, however, were made primarily for money to pay the ordinary household bills of their respective families which had *184 previously been paid by their husbands. None of the money withdrawn by Rosalie or Reva was ever deposited in a bank account, although Rosalie, at least, had her own bank account. The withdrawals by the wives were not made for their own uses, purposes, and enjoyment, and the evidence shows that they did not have rights equal to the petitioners to make withdrawals. So far as appears from the record, Rosalie and Reva drew on the income of the business only insofar as they were permitted to do so by the petitioners, and then only to buy and pay for those things which a husband usually pays for and for which the petitioners had been paying before the partnership agreement was signed. Proportionate distributions of the earnings of the business were never made to the members of the alleged partnership. In addition, capital accounts were not set up on the books for any of the purported partners, and, up until the beginning of 1942, all withdrawals made by the wives were charged to their husbands' drawing accounts. Nor did either of the wives ever exercise any dominion or control over the interests which were conveyed to them. They never possessed unfettered control over the interests which *185 allegedly constituted their contributions to the capital of the business. No sooner were the conveyances made than the interests so conveyed were made part of the capital of the alleged partnership over which neither Rosalie nor Reva had any dominion or control. At the same time that the petitioners executed the deed conveying an interest in the business to their respective wives, articles of partnership were signed in which the interests so conveyed were made part of the capital of the alleged partnership. In addition, Rosalie Marcus, the only one of the wives to appear at the trial, testified that at the same time that the deed and the partnership agreement were executed and as part of the same interrelated transaction, she executed a will in which she named her husband as her heir. Moreover, as a result of the execution of the agreements, Rosalie and Reva did not assume any personal liability for losses that the enterprise might suffer; their liability was expressly limited by the partnership agreement to the interests which had been conveyed to them by their husbands at the time that the articles of partnership were signed. It is also clear that Rosalie and Reva did not contribute *186 in any way to the management or control of the business or participate in its conduct. After the articles of partnership were signed, the petitioners continued to control the business as they had done prior thereto, and no services of any sort were ever performed for the enterprise by the wives. The inclusion of the wives as partners did not promote the conduct of the business. Their husbands neither needed nor obtained from them anything that they did not already possess. Cf. Scherf v. Commissioner, 161 Fed. (2d) 495, affirming 7 T.C. 346, certiorari denied, 323 U.S. 810. Another relevant factor is that the evidence shows that no capital not available for use in the business was brought into it by the alleged inclusion of the wives as partners. Although, even where vital services and managerial participation and control are also lacking as in this proceeding, a failure to contribute original capital is but one of the factors to be considered in weighing the intent of the parties, the absence of all these elements does place a heavy burden on the petitioners to show a bona fide intent by the parties to join together as partners. Commissioner v. Culbertson, supra, at 744. *187 See, also, Zander v. Commissioner, 173 Fed. (2d) 624, 627. This burden has not been met by the petitioners, and we have concluded that there was no bona fide intent among the parties to conduct the business together as partners. It is held that the income of the Marcus Furniture Company attributed to the petitioners' wives is properly includible in the gross income of the petitioners. Since, under our holding on the primary issue, each of the petitioners omitted from his gross income an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in each of his returns for the years 1943 and 1944, the applicable period of limitation against the assessment and collection of the deficiencies for these years is the five-year period contained in section 275(c). The mere fact that partnership returns which showed the total amount of the gross income of the partnership were filed for 1943 and 1944 is not sufficient to prevent an omission from gross income by the petitioners within the terms of section 275 (c). O'Bryan v. Commissioner, 148 Fed. (2d) 456, affirming 1 T.C. 1137; Katharine C. Ketcham, 2 T.C. 159, *188 aff'd, 142 Fed. (2d) 996. The assessments by the respondent, therefore, were timely. Decisions will be entered for the respondent.