M. C. Parrish & Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 111764, 112652. Promulgated January 27, 1944.

120

*R. B. Cannon, Esq.*, and *Claude Collard, C. P. A.*, for the petitioner.
*Samuel G. Winstead, Jr., Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: As indicated in our opening statement, the questions presented by the assignments of error are: (1) Did the respondent err in failing and refusing to hold that the profits earned and collected by petitioner in each of the years 1937 1939, and 1940, with respect to warrants drawn by the treasurer of the State of Texas on the general revenue fund of the state, constituted interest on an obligation of the state specifically excluded from taxable income by section 22 (b) (4) of the Revenue Act of 1936 and of the Internal Revenue Code? (2) Did the respondent err in failing and refusing to allow certain deductions for bad debts for the years 1939 and 1940? (3) Did the respondent err in failing and refusing to allow certain deductions for depreciation for the year 1939? (4) Is the assertion by the respondent of any deficiency in either income or excess profits taxes for the year 1937 barred by the statute of limitations? These questions will be considered in the order stated.

1. Petitioner contends that the amounts in question of $15,512.52, $48,093.67, and $22,966.21 represent interest upon the obligations of a state and as such are exempt from taxation under section 22 (b) (4) of the Revenue Act of 1936 and of the Internal Revenue Code. The respondent contends that the amounts in question represent gains, profits, and income derived from dealings in warrants and as such are to be included in gross income under section 22 (a) of the Revenue Act of 1936 and of the Internal Revenue Code. The material provi-

sions of this section are substantially the same in both the act and the Code, and those of the Code are set out in the margin.[1]

Petitioner argues that G. C. M. 10452, C. B. XI–1, p. 18, tends to support its contention, but has cited no court decision or other authority in its favor. The notes involved in G. C. M. 10452 were issued at a discount, which at once distinguishes that ruling from the situation here. The warrants involved in these proceedings were not issued at a discount, notwithstanding petitioner's contention to the contrary. Petitioner contends that since prior to the submission of their bids to the state some of the payees of the warrants secured petitioner's commitment as to the rate of discount at which it would purchase the warrants and since this discount was included as a part of the bid price, namely, the market price plus the discount, the practice of the state "in issuing its general revenue fund warrants, under the circumstances described, constituted nothing more nor less than the borrowing of money on its noninterest-bearing obligations issued at a discount." We do not agree with that contention. It is our opinion that the entire amount of the warrant is the purchase price which the state agreed to pay for the particular commodity in question or the cost of the services in those cases where warrants were issued for services rendered the state. Cf. *Daniel Bros. Co.* v. *Commissioner*, 28 Fed. (2d) 761; *Henrietta Mills, Inc.* v. *Commissioner*, 52 Fed. (2d) 931. During the taxable years in question the person or firm making the bid would submit the bid in one lump sum without breaking it down to show any element of discount.

A simple illustration, we think, will show the error of petitioner's contention that the State of Texas was selling its warrants at a discount. Suppose that a contractor who sold the State of Texas certain grocery items for its penitentiary system received a state warrant for the amount of the goods which he sold and, instead of selling the warrant at a discount, kept it until there was money in the general fund to pay it and collected it in full. Would such contractor have to return in his gross income any interest or discount earned on his state warrant? We think not. The State of Texas had not issued the warrant to him at a discount. It had simply paid him the

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter;

*    *    *    *    *    *    *

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, * * *

agreed purchase price for his goods. He may have added something to the price of his goods to take care of the delay which would transpire before he got his money, but that certainly would not be interest or discount. This illustration is equally applicable to the salary warrants of state employees, in which the evidence shows petitioner had many dealings. The state added nothing to the face amount of the warrants to take care of the lapse of time before they would be paid. If an employee kept his warrant until there was money in the general fund to pay it, he collected his salary in full. If he did not keep it until there was money in the general fund to pay it but sold it at a discount to a dealer such as was petitioner, he of course suffered a loss, but such loss does not represent any interest or discount on state warrants so far as the state is concerned. The loss came out of the employee's pocket and not out of the state's.

We hold that the amounts in question are not exempt from taxation as interest upon obligations of a state under section 22 (b)(4), but should be included in gross income within the specific provisions of section 22 (a) and the rationale of *Willcuts* v. *Bunn*, 282 U. S. 216.

Petitioner offered some evidence with the intention of contending that in any event $28,834.25 of the $48,093.67 included in its gross income for 1939 should be excluded on the ground that, if income, it was income in prior years. There was no assignment of error to this effect. But, aside from that objection, the evidence shows that petitioner received the $28,834.25 in 1939 from banks with which it had been dealing and had not reported it as income in any prior year, and, since it reported on the cash receipts and disbursements basis, the amount was properly included in petitioner's 1939 income.

2. Petitioner, by amendments to the respective petitions filed in these proceedings at the hearing, assigned error on the part of the respondent in failing and refusing to allow as deductions for bad debts $741.54 in 1939 and $497.25 in 1940. The reason for these amendments was due to the change in the law [2] relating to bad debts as enacted in section 124 of the Revenue Act of 1942, the material provisions of which are in the margin.[3] · At the hearing petitioner proved that certain debts totaling $741.54 had become worthless within the taxable year 1939, and that certain debts totaling $537.25 had become worthless within the taxable year 1940. The returns offered in evi-

---

[2] Sec. 23 (k) (1), Internal Revenue Code.

[3] SEC. 124. DEDUCTION FOR BAD DEBTS, ETC.

(a) GENERAL RULE.— Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows :

"(k) BAD DEBTS.—

"(1) GENERAL RULE.—Debts which become worthless within the taxable year ; * * *

* * * * * *

(d) EFFECTIVE DATE OF AMENDMENTS * * * and the other amendments made by this section shall be effective with respect to taxable years beginning after December 31, 1938.

dence disclosed that petitioner had deducted as bad debts the amount of $5,299.40 in 1939 and no amount as bad debts in 1940. In his determination of the deficiencies the respondent made no adjustments regarding bad debts for either year. In his brief the respondent contended that in the absence of evidence showing that no part of the debts totaling $741.54 was contained in the larger amount of $5,299.40, no additional allowance should be made for the year 1939; and that for the year 1940 petitioner should be limited to $497.25, the amount claimed in the amendment to the petition. Subsequent to the filing of briefs petitioner filed a motion, which was granted, "To Reopen Record and for Leave to Take and File Deposition," and the parties thereafter stipulated that, of the $741.54 of debts which became worthless within the year 1939, $498.95 was included in the larger amount of $5,299.40 and $242.59 has never been deducted by petitioner or allowed by respondent.

We hold that for the year 1939 petitioner is entitled to an additional allowance for bad debts in the amount of $242.59, and that for the year 1940 petitioner is entitled to an allowance for bad debts in the amount of $497.25. The proof showed that debts owed petitioner to the amount of $537.25 became worthless in 1940. However, petitioner in assignment of error (d) for 1940 alleged error only as to bad debts of $497.25.

After the hearing petitioner filed "Motion to Amend Pleadings to Conform to Proof." The grounds of this motion were "That at the hearing had in these proceedings the right of Petitioner to deductions for depreciation and bad debts in excess of the amounts formally plead was clearly established." This motion was granted. However, petitioner has not filed any amendments to its petition since the granting of said motion. After the granting of this motion petitioner should have filed amendments which pointed out the increased deductions for which it was contending. See Rule 17, our Rules of Practice. Petitioner having filed no amended assignments of error to conform to the proof, our decision is limited to the assignments of error in the original petition and in amendments to the petition which were properly filed at the hearing.

3. Petitioner, by an amendment to petition in Docket No. 111764 filed at the hearing, alleged that the respondent erred in not allowing a deduction of $359.29 for depreciation of its building and furniture and fixtures for the year 1939. Based upon the proof offered at the hearing, the respondent concedes that petitioner is entitled to depreciation for the year 1939 of $256.56 on the building and $194 on the furniture and fixtures. These amounts exceed by $91.27 the amount asserted by petitioner in its assignment of error for 1939. However, since the Commissioner concedes the larger total and the evidence sus-

tains it, the amounts conceded by respondent will be allowed in the computation under Rule 50.

4. Are the deficiencies for 1937 barred? The applicable statute is section 275 of the Revenue Act of 1936, the material provisions of which are in the margin.[4]

The return for the calendar year 1937 was filed on March 9, 1938, but under section 275 (d) it shall be considered as if it was filed on March 15, 1938. See section 53 (a), Revenue Act of 1936. The deficiency notice was mailed on July 17, 1942. Therefore, if the three-year period provided for under section 275 (a) is applicable, the deficiencies are barred; and if the five-year period provided for under section 275 (c) is applicable, the deficiencies are not barred.

In *Emma B. Maloy*, 45 B. T. A. 1104, we had occasion to construe the term "gross income" as used in section 275 (c) of the Revenue Act of 1934, which section is identical with section 275 (c) of the Revenue Act of 1936. In the course of our opinion we said:

> * * * We think it evident that the term "gross income" as used in section 275 (c), *supra*, refers to the statutory gross income required to be reported on the return. The heading, "Gross Income", on the form of the return calls for the inclusion there only of gross taxable income. That amount does not include that portion of capital gain which is not to be taken into account in computing taxable income, nor does it include nontaxable interest on Government securities. Section 275 (c) refers to the omission from gross income of an amount "properly includible therein" * * *

Did petitioner omit the amount of $15,512.52 in question for the year 1937 from its gross income as stated in the return? We held under the first issue that this amount was properly includable in petitioner's gross income for 1937 under section 22 (a) of the Revenue Act of 1936. Petitioner twice reported the amount in its return, once under schedule B as nontaxable income and again in the typewritten schedule as a part of the "total receipts," but at neither place was the amount reported as "gross income." The term "gross income" is defined in section 22 (a), *supra*. See footnote 1; see also *Emma B. Maloy, supra*. Petitioner did not report the amount of $15,512.52 as gross income under section 22 (a); it reported the amount as an *exclusion* from gross income under section 22 (b) (4). Although an

---

[4] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
  Except as provided in section 276—
  (a) GENERAL RULE.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
        *        *        *        *        *        *        *
  (c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in *excess of 25 per centum of the amount* of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.
  (d) For the purposes of subsections (a), (b), and (c), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day.

amount may be disclosed fully on the return, if it is not reported as a part of the gross taxable income, it is not a part of the "gross income stated in the return" as that phrase is used in section 275 (c), *supra. Emma B. Maloy, supra; Estate of C. P. Hale,* 1 T. C. 121; *American Liberty Oil Co.,* 1 T. C. 386; *Katharine C. Ketcham,* 2 T. C. 159; *American Foundation Co.,* 2 T. C. 502. In the typewritten schedule of "Receipts" attached to the return the amount was labeled "Interest collected on State of Texas obligations." If this had been the proper label, such "receipts" would not have been includable in petitioner's gross income under section 22 (a), but would have been specifically excludable from gross income and exempt from taxation under section 22 (b) (4). The latter way is the way in which petitioner reported the receipts of $15,512.52, and it still contends under issue (1) that this amount should be excluded from gross income. We hold that petitioner omitted from its "gross income stated in the return" the amount of $15,512.52. The amount of "gross income stated in the return" was $11,426.94. Since the amount omitted from gross income was properly includable therein, and since this amount is in excess of 25 percent of the amount of gross income stated in the return, it follows that the deficiencies for the year 1937 are not barred by the statute of limitations.

*Decisions will be entered under Rule 50.*