H. Gates Lloyd, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 2843.   Promulgated February 26, 1945.

*Jesse R. Fillman, Esq., Wm. Clarke Mason, Esq.,* and *Owen Biddle, Esq.,* for the petitioner.

*William H. Best, Jr., Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: Petitioner is a partner of Drexel & Co., which partnership became a member of the syndicate mentioned in our findings. During the taxable year 1941 the syndicate sold at a discount $666,-896.65 face value of B coupons for $647,630.38. The principal question at issue is whether petitioner's ultimate share of the proceeds of $647,-630.38 should be included in gross income under section 22 (a) of the Internal Revenue Code, or whether it should be excluded therefrom under section 22 (b) (4) as representing tax-free interest. In the alternative, the respondent contends that if the proceeds from the discounted B coupons be held to represent tax-free interest, then the loss sustained on the sale of the bonds from which the B coupons were detached should be considered as a "short-term capital loss" un-

der section 117 (a) (1) and (3) of the code, and, under section 117 (d) (2), "allowed only to the extent of short-term capital gains."

The material provisions of section 22 are set forth in the margin.[1] The parties are in substantial agreement as to the facts set out in our findings. They also agree that there is no decided case directly in point on the principal question here presented.

The new refunding bonds of the city were obligations of a political subdivision of a state. The A and B coupons attached to these obligations represented the "interest" which the city had agreed to pay on the several dates therein specified. If the syndicate had held the bonds and the coupons until the due date of the latter and then collected the amount stated on the coupons, there would be no question as to the tax-exempt status of such collections. As a matter of fact the syndicate did hold $15,314.22 face value of B coupons until they matured and then collected the full face value thereof, and the respondent now concedes in his brief "that the said sum of $15,314.22 is tax-exempt interest to the Syndicate under the provisions of Section 22 (b) (4) of the Internal Revenue Code and should be adjusted under Rule 50." But as to $666,896.65 face value of B coupons, the syndicate saw fit to sell them. These coupons ran from July 1, 1941, and matured at various dates from January 1, 1942, to August 1, 1947. The syndicate did not hold these coupons until maturity. Almost simultaneously the syndicate purchased old outstanding bonds, exchanged them for new refunding bonds with A and B coupons attached, detached the B coupons, sold the new refunding bonds with A coupons attached at a loss, and then sold $666,896.65 face value of B coupons at a discount of 1¼ percent and received therefor $647,630.38. Under such circumstances, is the receipt of $647,630.38 by the syndicate the receipt of tax-free interest separable from the computation of gain or loss on the sale of the new refunding bonds? We do not think it is.

The usual import of the term "interest" is "the amount which one has contracted to pay for the use of borrowed money." *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552. In *Deputy* v. *DuPont*, 308 U. S. 488, "interest on indebtedness" was said to mean "compensation for the use or forbearance of money." It can hardly be said that

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter;

* * * * * * *

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, * * *

the $647,630.38 in question was received by the syndicate for the use of money it had loaned. After it sold the new refunding bonds it was no longer a creditor of the city as far as those bonds were concerned. It sold those bonds before any appreciable amount of interest, if any, had accrued thereon.[2] We think that in selling the B coupons at a discount the syndicate merely sold the right to collect interest in the future, and that the proceeds from such sales must be treated the same as the proceeds from the sales of the bonds themselves with the A coupons attached.

It is, therefore, our opinion that when the syndicate purchased the old bonds, exchanged them for new bonds with A and B coupons attached, detached the B coupons, sold the new bonds with the A coupons attached, and then sold the B coupons at a discount, it was dealing in property, and the sale price received for that property was the total amount received for the refunding bonds with A coupons attached, plus the amount received for the B coupons. We do not think it is permissible to set apart the amount received for the detached B coupons as exempt interest. In making the above statement it is, of course, to be understood that any interest on either the A or B coupons which accrued while the bonds were in the syndicate's hands and which was collected by the syndicate from the purchasers in the sale of the bonds as a separate accrued interest item, was in fact interest and is exempt from taxation. The Commissioner so concedes.

It is our opinion that under section 22 (a) of the Internal Revenue Code and the rationale of *Willcuts* v. *Bunn*, 282 U. S. 216, any gain or profit derived from the transactions as a whole must be included in gross income. In determining this gain or profit the proceeds from the discount of the B coupons should be included at $647,630.38 instead of $662,944.60, for the reason that the Commissioner now concedes that $15,314.22 was tax-exempt interest.

It is proper to point out, we think, that this is not a case where the city of Philadelphia issued its bonds at a discount, thus making ap-

---

[2] Petitioner is not claiming, as such, the benefit of the rule that where municipal bonds are sold between interest dates, and the agreement of sale specifies a division between the principal sum of the bond and accrued interest, the latter will be regarded as being received tax-free. See I. T. 1337, Internal Revenue Cumulative Bulletin I–1, p. 29. The bonds here involved all ran from July 1, 1941, and matured from 1949 to 1973, with first optional call dates from 1948 to 1958. As previously stated, the B coupons ran from July 1, 1941, and matured semiannually from January 1, 1942, to August 1, 1947. The syndicate both acquired and disposed of all new bonds and coupons during the latter one-half of 1941. It is thus apparent that very little interest, as such, could have accrued while the syndicate held the bonds. In any event, petitioner is not making any such limited claim for the exemption of any interest that might have accrued while the syndicate actually held the bonds, and if such claim were made the evidence would be insufficient to determine the amount of such accrued interest, if any. Furthermore, the evidence does not show that the sale agreements specified any division between the principal sum of the bonds and accrued interest, and it is not altogether clear as to what may be included in "Wholly tax-exempt Interest Received: Bonds held by Account $310,700.71," which the syndicate reported on its return and which the Commissioner has not disturbed.

plicable G. C. M. 21890, Internal Revenue Cumulative Bulletin 1940–1, p. 85, where it is ruled that:

Where interest-bearing State bonds were purchased by A at a discount and, pursuant to provisions contained in the bonds, they were redeemed in 1938 at a premium and accrued interest prior to maturity, the accrued interest and the discount received upon redemption of the bonds constitute interest upon the obligations of a State and are exempt from Federal income tax under section 22 (b) 4 of the Revenue Act of 1938.

In his brief petitioner refers to the foregoing G. C. M. and to G. C. M. 10452, Internal Revenue Cumulative Bulletin XI–1, p. 18, but we do not think that they have any application to the facts which are present in the instant case.

None of the refunding bonds to which the B coupons were attached were issued at a discount. Therefore, the $647,630.38 which is involved in the present controversy did not represent the collection of "discount" as that term is used in G. C. M. 21890 or G. C. M. 10452, *supra*. Cf. *M. C. Parish & Co.*, 3 T. C. 119, in which this Court, in holding that the amounts there involved did not represent true bond discount, but represented trading profits, relied upon *Willcuts* v. *Bunn*, *supra*. There is no issue in the instant case concerning petitioner's right to exclude from his gross income any interest which had accrued while the bonds were in the hands of the syndicate and which was collected by it during the taxable year. The Commissioner concedes that the $15,314.22 par value of B coupons which the syndicate held to maturity and cashed in 1941 is tax-exempt interest, and that amount is no longer in controversy.

Petitioner, in support of his contention that the proceeds from the discount of the B coupons in the amount of $647,630.38 are tax-free interest under section 22 (b) (4) of the code, argues that the transfer of a right to receive income will not change the position of the transferor under the income tax law, either by shifting the tax burden if the transfer is a gift or by altering the character of the income if the transfer is made for consideration, and cites *Helvering* v. *Horst*, 311 U. S. 112; *Hyman* v. *Nunan*, 143 Fed. (2d) 425; *Gibson* v. *Commissioner*, 133 Fed. (2d) 308; and *Hort* v. *Commissioner*, 313 U. S. 28. In the *Horst* case the taxpayer detached unmatured coupons from a bond and made a gift of them to his son, who collected them at maturity. The question there was whether the father or the son was taxable on the interest when collected at maturity. The Supreme Court held that the father was taxable. The *Hyman* case reached the same result with respect to the donor of the right to receive corporate dividends undeclared at the date of gift. In the *Gibson* case the taxpayer, as a shareholder, received from a corporation certain warrants entitling her to purchase newly authorized convertible preferred stock of the corporation. The taxpayer did not exercise the rights to

subscribe, but instead sold them. The question before the court was whether the proceeds of the sale were taxable as a dividend or as capital gain. The decision was that the taxpayer had acquired an option to receive a corporate distribution, not taxable upon the mere receipt of the option, which was realized upon the sale, hence the proceeds were taxable as a dividend. In the *Hort* case, the lessor taxpayer agreed to cancel a lease in consideration of a lump sum to be paid to the lessor by the lessee. The Supreme Court held that the amount received by the lessor did not constitute a return of capital, but that the lessor was required to report the amount as gross income received. We do not regard these cases as helpful in deciding the issue before us. The effect of petitioner's argument is that, if under certain circumstances the realizations on the B coupons be held to be tax-free interest, then all realizations thereon must likewise be held to be tax-free on the ground that the character of the income from the coupons never changes. That this does not follow is illustrated by *Pierce Corporation* v. *Commissioner*, 120 Fed. (2d) 206, affirming a memorandum opinion of the Board of Tax Appeals in which coupons attached to defaulted municipal bonds which had accrued before and those which had accrued after the purchase were treated entirely differently for tax purposes. See also *R. O. Holton & Co.*, 44 B. T. A. 202.

Petitioner seeks an exemption from tax. "The rule is that, in claims for exemption from taxation under legislative authority, the exemption must be plainly and unmistakably granted; it cannot exist by implication only; a doubt is fatal to the claim." *Chicago Theological Seminary* v. *Illinois*, 188 U. S. 662, 672. Section 22 (b) (4) of the code exempts "only interest." *United States* v. *Stewart*, 311 U. S. 60. We do not think the $647,630.38 in question under the facts narrated in our findings of fact was interest. It follows, therefore, that petitioner's share of this amount is not exempt from tax, and we so hold. It thus becomes unnecessary to consider the respondent's alternative contention.

Reviewed by the Court.

*Decision will be entered under Rule 50.*