John H. Cassidy v. Commissioner. Thomas C. Cassidy v. Commissioner.
John H. Cassidy v. Commissioner
Docket Nos. 8334 and 8335.
United States Tax Court
1946 Tax Ct. Memo LEXIS 30; 5 T.C.M. (CCH) 989; T.C.M. (RIA) 46270; November 25, 1946
*30 O. Walker Taylor, Esq., and Arthur T. Garvey, Esq., for the petitioners. Charles W. Nyquist, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By these consolidated proceedings, petitioners challenge the following determinations of deficiency in income tax for the calendar year 1941: Docket No.
Petitioner
Deficiency
8334
John H. Cassidy
$11,629.13
8335
Thomas C. Cassidy
1,770.79
In Docket No. 8334, the following questions are presented: (1) Whether respondent erred in determining that petitioner understated his income for the year in the amount of $1,957.25, and in determining it in the amount of $61,405.46. (2) Whether respondent erred in disallowing $10,943.40 of $20,943.40 paid by petitioner to his son, Thomas Cassidy, for personal services. (3) Whether respondent erred in disallowing $9,125 of $14,222.82, claimed by petitioner on his return as a deduction for various business expenses. Respondent, by amended answer, sought an increase in deficiency, but on brief has expressly waived this issue. The sole question in Docket No. 8335 is whether respondent erred in disallowing $5,000 of the *31 $8,810, claimed by petitioner on his return as a deduction for various business expenses. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Those facts hereinafter appearing which are not from the stipulation are otherwise found from the record. Petitioners, John Cassidy and Thomas Cassidy, father and son, respectively, are residents of Massachusetts. Each filed his 1941 income tax return, which was prepared on the cash method, with the collector of internal revenue, district of Massachusetts. In 1941 John Cassidy was engaged in the business of representing various machinery manufacturing corporations on a commission basis. He represented the Sheffield Corporation, Midwest Tool and Manufacturing Company, McCrosky Tool Corporation, and Knowles Tool Corporation from 1933, and the Buckeye Tool Manufacturing Company from 1940. On Schedule H of his income tax return for the calendar year 1941, John Cassidy reported total receipts in the amount of $59,448.21 without showing details as to their sources. Respondent determined that his total receipts during 1941 were $1,957.25 greater than reported, consisting of receipts *32 as follows: Sheffield Corporation, 721 Springfield
Street, Dayton, Ohio
$20,907.57
Midwest Tool & Manufacturing Com-
pany, 2360 W. Jefferson Street, De-
troit, Michigan
13,836.08
McCrosky Tool Corporation, Mead-
ville, Pa.
17,034.37
Knowles Tool Corporation, 800 South
7th Street, Richmond, Indiana
7,617.41
Buckeye Tool Manufacturing Com-
pany, West Apple Street, Dayton,
Ohio
2,010.03
Total receipts
$61,405.46
John Cassidy admits having received payments in 1941 from the following companies and in the following amounts: Sheffield Corporation
$19,027.74
Midwest Tool & Manufacturing Com-
pany
13,836.08
McCrosky Tool Corporation
16,973.06
Knowles Tool Corporation
7,617.41
Buckeye Tool Manufacturing Com-
pany
1,994.02
His records of commissions earned, to which he referred in computing his income as set forth in his tax return, consisted of monthly statements of the various manufacturers indicating commissions due him which were not paid until the following month. Substantially all of these records were misplaced and could not be located by him. At the insistence of four companies which he represented, John Cassidy employed *33 two sub-agents, his son, Thomas Cassidy, and Joseph Perry, of Pine Point, Maine, who worked in a restricted territory, handling only one line. His son commenced work in January, 1941, and handled all lines, working throughout the whole of the territory, six New England States. The general increase in business necessitated the employment of additional personnel. Each of the sub-agents worked under oral contracts, requiring that they paid their own expenses, and entitling them to receive two-thirds of the commissions earned on the business they procured. Thomas Cassidy would report each week to his father on the prospects and customers he had approached, and when the monthly statements were received from the various companies, John Cassidy would note with a mark of "T.C." those orders which were procured by his son. Thomas Cassidy's commission was determined from these records. Only a portion of these monthly statements was available. None of the reports made by the son were available. Pursuant to this arrangement, Joseph Perry was paid about $378 during 1941. During 1941 John Cassidy issued to his son checks in the total amount of $20,943.40, which were endorsed and cashed by *34 Thomas Cassidy. The bulk of the proceeds of such checks was placed by the son in his safety deposit box. Each of the petitioners claims that this amount represents commissions earned by Thomas Cassidy pursuant to the arrangement made with his father, and the son reported this amount together with other income on his tax return. With reference to this payment respondent stated in his notice of deficiency: The deduction of $20,943.40 alleged to have been paid to your son, Thomas C. Cassidy, on account of commissions paid has been disallowed to the extent of $10,943.40 for the reason that the amount claimed as a deduction is unreasonable. Information on file in this office indicates that your son was employed by Campbell Page & Company, insurance brokers, 44 Vernon Street, Springfield, Massachusetts, spending one-half his time with that firm and the other half with your business. It also appears that the checks were drawn in favor of your son during the year totalling $20,943.40, which were endorsed and cashed by him at the Springfield Safe Deposit and Trust Company, and later put in a safe deposit box. In 1941 Thomas Cassidy was 28 years of age. He had neither advanced nor technical *35 education. From 1933 to 1938 he worked for Westinghouse Electrical Manufacturing Company. From 1938 to 1940, he worked for his father-in-law as an insurance salesman, earning $1,800 per annum. He received this same salary in 1941 although he did no appreciable work for his father-in-law, the payment being made because of the renewals of insurance contracts previously written by him. He included this amount on his tax return as a receipt of income, but did not show its source. On line 17, Schedule H, of his 1941 income tax return, John Cassidy claimed deductions for the following items and amounts: Tel. and tel.
$ 752.32
Hotel rooms and meals
3,350.00
Auto expenses
1,560.00
R.R. and airplane fares
1,680.50
Promotion, etc.
6,880.00
$14,222.82
He also claimed, as a business deduction, depreciation on an automobile in the amount of $279, but he now concedes that depreciation has already been included in the aforementioned amount of auto expense. Of the claimed deductions of $14,222.82, respondent disallowed $9,125, and as reason assigned therefor in his notice of deficiency, stated: None of the above items were substantiated by you. The deductions claimed *36 are disallowed to the extent of $9,125.00 for the reason that they are excessive. John Cassidy kept no books or records of his business expenses, and the amounts claimed for the various items were estimates on his part. Long distance telephone calls were made from time to time to the various companies, but neither records nor cancelled checks were available. John Cassidy estimated that he was away from home on business trips on the average of three days a week, during which time he would stay at hotels and have to buy his meals. He computed the amount claimed on his return by considering $15 as the average daily expenditure for room and meals. During 1941 John Cassidy used a 1941 Buick automobile, partly in business and partly in nonbusiness activities. He drove about 120 days during the year and averaged about 200 miles per day on business calls. He used as a factor in determining his automobile expenses, five cents a mile, which included all expenses of operation as well as depreciation and parking charges. Deduction for railroad and airplane fares was estimated on the basis of 12 trips to Detroit, Michigan, at an expense per trip of $60; 15 trips to Dayton, Ohio, at the *37 same average expense; Richmond, Indiana, four times, at an average expense of $70; Meadville, Pennsylvania, four times, at an average expense of $35. The deduction for "Promotion, etc." includes an estimated $4,000 spent in entertaining and seeking to procure orders from British engineers, representing the British Purchasing Commission. The remainder was intended to cover expenses of attending two conventions and various undescribed entertainment and gifts for customers and prospects. John Cassidy's total gross orders approximated $600,000, of which he personally secured about $350,000. Thomas Cassidy claimed as deductions on line 17, Schedule H, of his 1941 tax return the following items and amounts: Auto expenses
$1,480.00
Hotel rooms and meals
2,845.00
Promotion
2,980.00
Tel. and tel.
725.00
R.R. and airplane fares
780.00
$8,810.00
Respondent disallowed these deductions to the extent of $5,000, and allowed them to the extent of $3,810. In his notice of deficiency he explained his action: The deductions from commissions in the total amount of $8,810.00 have not been substantiated. Similar deductions have been claimed in the return of your father, *38 John H. Cassidy, from whom you derived the greater part of the commissions. It is the opinion of this office that the deductions should be disallowed to the extent of $5,000.00 for the reason that the amounts claimed are excessive. Thomas Cassidy kept no books on records and the aforementioned deductions are based upon estimates. In 1941 Thomas Cassidy drove a 1941 Pontiac 34,000 miles, 29,000 miles of which he claimed to have driven on business calls to his various customers and prospects in the six New England states; he considered five cents per mile as the cost of the business driving. He considered the cost of room and meals while away from home on business at about $11 a day, about $5 a day for room and about $6 a day for meals. He computed the deduction on the basis of meals for six days a week and hotel room for three nights a week. The amount claimed for promotion included amounts spent at the same two conventions his father attended, plus meals and gifts purchased throughout the year for customers and prospects. The amount claimed for telephone and telegraph was composed of calls and telegrams to various factories with which his father dealt. He computed the deduction *39 for "R.R. and airplane fares" on the basis of five trips to Detroit, five to Dayton, four to Meadville. Petitioner John Cassidy understated his income in the amount of $1,957.25. Petitioner John Cassidy is entitled to deduct as commissions paid his son for services rendered the amount of $14,750, which is the fair and reasonable value of the services rendered by the son. Petitioner John Cassidy is entitled to a deduction of $6,000 for "other expenses," which were claimed on the return in the amount of $14,222.82. Petitioner Thomas Cassidy is entitled to a deduction of $4,000 for "other expenses," which were claimed on the return in the amount of $8,810. Opinion The only issues to be disposed of are controversies of fact. Petitioners' claim that they actually expended the amounts in question for business purposes, and petitioner John Cassidy's assertion that he did not receive the dsputed item of commission are resisted by respondent. There seems no disposition to inject any complicated issues of law on the score of either party. The proceeding has consequently been disposed of in effect by our findings of fact. We are aware of the necessity of attempting to elicit the *40 scope of deductible items in a case like this to the best of our ability and regardless of the absence of records. See Cohan v. Commissioner (C.C.A., 2nd Cir.), 39 Fed. (2d) 540; Lucien I. Yeomans, 5 T.C. 870; Albert Nelson, 6 T.C. 764; Maurice A. Mittelman, 7 T.C. - (Nov. 15, 1946). In the present proceeding, however, respondent has not gone to the length of disallowing the claimed deductions to their full extent, but has himself made an evident effort to comply with the principle of the Cohan case. And on the basis of the statements of petitioners themselves, even accepting them at their face value, the amounts claimed seem to us in every instance manifestly excessive. Assuming that the payments in question were made, they would still have to be ordinary and necessary. Internal Revenue Code, section 23 (a). And it is not possible to eliminate entirely the suspicion that petitioners were at least outstandingly generous to themselves in their statement of amounts expended. We have as a consequence adopted in our findings of fact figures for the outlays in question which seem to us sufficiently likely and sufficiently reasonable *41 to warrant their allowance. The conclusion respecting the gross income of petitioner John Cassidy is the result of our examination and consideration of the entire record. As to the compensation deductible by petitioner John Cassidy for the services of his son, petitioner Thomas Cassidy, the amount to which we have concluded petitioner is entitled represents a computation of commissions payable under the agreement actually claimed but based on the business which appears to have been produced in fact by the son. If the son's claim - suggested vaguely and for the first time on brief - to be allowed to exclude a corresponding amount from his gross income on equitable grounds were otherwise justified, see Stanley B. Wood, 6 T.C. 930, we could not consider it under the state of the pleadings. Dixie Manufacturing Co., 1 B.T.A. 641, 646; M. C. Parrish & Co., 3 T.C. 119, 129, affirmed (C.C.A., 5th Cir.), 147 Fed. (2d) 284; Louis Halle, 7 T.C. 245; Eugene Houdry, 7 T.C. 666. Decisions will be entered under Rule 50.