Mary Flagler Cary v. Commissioner. Estate of Melbert B. Cary, Jr., deceased, Mary Flagler Cary and Edward S. Bentley, Executors v. Commissioner.
Cary v. Commissioner
Docket Nos. 12051, 12052.
United States Tax Court
1948 Tax Ct. Memo LEXIS 74; 7 T.C.M. (CCH) 724; T.C.M. (RIA) 48202; October 6, 1948
*74 1. Loss: Damage from storm. - The extent of the loss sustained by the taxpayers in 1938, not compensated for by insurance or otherwise, by reason of the destruction of trees on their country estate as the result of a hurricane, is determined from the evidence. Deduction for loss allowed under section 23 (e) (3) of the Revenue Act of 1938. 2. Decision limited to assignment of error in the pleadings. M. C. Parrish & Co., 3 T.C. 119, 129; aff'd, 147 Fed. (2d) 284. Joseph C. White, Esq., 60 Broadway, New York, N. Y., for the petitioners. Walt Mandry, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax for the year 1938 as follows: Mary Flagler Cary, Docket No. 12051
$6,912.57
Estate of Melbert B. Cary, Jr., De-
ceased, Docket No. 12052
$ 565.75
Several determinations of the respondent in determining the deficiency in the income tax liability of each petitioner are not contested. The petitioner, Mary Flagler Cary, and the decedent, Melbert B. Cary, Jr., were the owners in equal shares of certain real property in 1938. The *75 only question in these proceedings is the amount of a loss which the taxpayers sustained in 1938 from storm, under section 23 (e) (3) of the Revenue Act of 1938, resulting from the destruction of many trees on their real property. The taxpayers claimed that the loss from storm amounted to $30,000, at the time they filed their separate income tax returns for 1938, in which each one deducted one-half of the loss, $15,000. The respondent determined that a loss was sustained, but that the total amount of the loss was only $2,000. He allowed a deduction of $1,000 to each taxpayer, and disallowed, in each instance, $14,000 of the deduction taken in each return. The petitioners contend now that the amount of the loss sustained was $50,000, of which each is entitled to deduction of $25,000. The income tax return for the year 1938 of each taxpayer was filed with the collector for the third district of New York. The record in these proceedings consists of a short stipulation of certain facts, testimony and exhibits. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by this reference. During the year 1938, Mary Flagler Cary *76 and Melbert B. Cary, Jr. were husband and wife, who resided in New York City. At some time after the year 1938, Melbert B. Cary, Jr. died. Mary Flagler Cary and Edward S. Bentley are the duly appointed and acting executors of the estate of Melbert B. Cary, Jr., deceased. Prior to 1929, the Carys searched the country areas of New York and Connecticut for an extensive holding of property which would provide a building site for a large and imposing home. They decided, ultimately, to purchase property in Washington township near Millbrook village in Dutchess County, New York. They located a hilly, unimproved parcel of land, the Bacon property, covering 114 acres. Upon this land, a hill rose to a high plateau, 700 feet above sea level, and 400 feet above a stream which ran along the base of the hill, Wappingers Creek. The hill was known as Cannoo Hill. The top of the hill, or plateau, covered a more or less level area of about five acres. A grove of beautiful and handsome trees of large size grew upon the five-acre hilltop area. There were 275 hardwood trees in this grove of trees, six to thirty-six inches in diameter; pines, hemlocks, oaks, maples and ash. Some of the trees were seventy-five *77 to eighty years old. The view from the top of Cannoo Hill is a magnificent one from every side. To the west, forty miles distant, the Catskill Mountains can be seen; to the east, the Berkshires; and below lies a beautiful panorama of rolling farm country. The plateau on the top of Cannoo Hill appealed to the Carys as a most attractive site for the house which they planned. The features which appealed to them especially were the views, the stream below, and the grove of beautiful trees, which were of such large dimensions as to be in proportion to the height and size of the proposed house. In particular, the trees presented a natural landscaping for a house, and would provide protection from the winds, shade from the sun, and ornamental screening so that the house would not stand out as a landmark on the top of the hill. The Carys purchased the Bacon property in 1930 for $26,500. They intended to build a large house within the five-acre plateau on top of Cannoo Hill. Thereafter, in preparation for the construction of the house, they spent almost all of $95,199 on the Bacon property for certain purposes which are set forth hereinafter. Prior to September 1938, the total sum invested *78 in the Bacon property was $121,699. However, the Carys desired a rather large estate, and since the Bacon property was almost entirely hill property, they wanted to acquire property around the hill. Therefore, the Carys assembled seventeen parcels during several years, beginning in 1929. The purposes were to protect the views from the hilltop from the encroachment of unattractive buildings and occupancy and to assure privacy to themselves. In 1938 the Carys owned in equal shares 1,670 acres to the west, north and east of Cannoo Hill, including a small parcel of thirty-two acres across the road to the south, opposite the entrance to the Bacon property. The 1,670 acres is an assemblage of old farms which now constitutes one large unit. The total cost of the acreage was $190,270, including various fees and charges of $8,191. The cost of certain "improvements" on the Bacon property, referred to above, made the total investment prior to September 1938, $285,469. In general, the entire unit of property lies north of the Dutchess County Turnpike, which runs from Poughkeepsie to Millbrook, and east of state highway 82-A, which runs northward from Washington Hollow. The Sharon Turnpike *79 branches off from the Dutchess County Turnpike and runs past the Bacon property. The entire property has frontages on the above highways. Also, three old country roads run through the property, the Cannoo Hills road and the road to Hibernia, as well as Wappingers Creek, a trout stream. The entire unit of property, dominated by Cannoo Hill, is varied in character. The hill itself is in the southeast section. It is extremely precipitous on its western and southwestern slopes; its northern and southern slopes are gentler. The south end of the hilltop terminates in a razorback ridge. The five-acre plateau is on this ridge. The hilltop has an unusual formation. Its terrain is rocky and rough. In the northern portion of the 1,670 acres, the land is undulating and trees and orchards grow there. The western portion is given to fields and is less rolling, and relatively level land. Most of the acreage was assembled in 1929 and 1930, when twelve parcels were purchased. Three more parcels were acquired in 1931, 1932, and 1934; and two parcels in 1936 and 1937. The parcels are contiguous and make an integrated area. There are large areas of woodland on the entire estate. Within the wooded *80 areas are trees of all kinds, and there are hundreds of large trees thirty-six inches in diameter growing on the estate of 1,670 acres. The slopes of Cannoo Hill, on the Bacon property, are wooded, and the adjoining property on the north comprises three wood lots called the Halstead, Lovelace, and Hall wood lots. Although the entire acreage makes a large unit, certain parcels are rather distant from the Bacon property and the Cannoo Hill, and constitute an outer area surrounding an inner group of parcels which are close or contiguous to Cannoo Hill on the west, north, and east sides. The parcels which surround Cannoo Hill, or are close to it are the Conover, Lovelace, Hall, Knapp, and Crear farms, and the three wood lots named above. These seven parcels cost the total sum of $85,639, excluding the Bacon property, and cover 585 acres. The entrance to the Bacon property is on Sharon Turnpike, on the south border. The ascent up the hill to the plateau is by a winding road. When it was purchased, the Bacon property was raw, wooded land without water, or electricity, or other improvements. It was necessary to clear out overgrowth, build an adequate road as a means of access to the *81 proposed building site on the top of Cannoo Hill, and obtain water and electricity. It was necessary to obtain water and get it to the top of the hill for fire protection, to maintain plantings, and to supply the proposed residence. Before September 1938, the Carys expended various large sums to make the above provisions, as follows: The sum of $20,050 was spent for water and electricity, as follows: Two wells, $3,452; electric pump, eight-inch pipe line and pump house, $8,678; water tank and pipe line, $3,263; electric transmission line and electric power line, $4,657. During 1936 and 1937, the Carys built a substantially based permanent road, with catch basins for flash floods, extending about one mile from the Sharon Turnpike to the top of the hill, at a cost of $50,504. The road rises in two sweeping curves about 400 feet from Wappingers Creek to the top of the hill. Guard rails and guard walls were built on the down-sides of the road. In 1932, a small frame cottage with shingle exterior was built on the hilltop at a cost of $6,248 for the cottage, and $1,191 for furnishings. This was not a residence; it was a teahouse, and was a temporary building. In 1937 and 1938, certain *82 clearing was done on the Bacon, Chase, Conover, Second Bacon, and Crear parcels; and trees, shrubs and hedges were planted in various areas. Trees and hedges were planted along the Hibernia and Sharon roads, and along the road on the Bacon property. The planting cost $16,653. Also, a temporary terrace was built on the top area at a cost of $553. During the period 1931 to 1937, the Carys had several plans drawn for their proposed house. The plans called for a long house, laid upon the plateau area in such way as to avoid the removal of the large trees and, at the same time, obtain the benefits of the natural locations of the trees. As planned, only two or nine large trees would have been removed. A wooden model of the proposed house was built in 1933. Also, the outline of the structure was laid out with stakes and string on the land. The house was to be 118 to 160 feet long, 56 to 68 feet wide in the widest section, and 34 to 38 feet wide in the narrowest section; one wing was to be three floors high, with attic above, and the other wing would have been two floors high, with an attic. The plan called for a fireproof house of steel, cement and stone construction. It was to have high *83 ceilings and many spacious rooms, and rooms for all utilities. With respect to landscaping the surrounding area on the hilltop, it was planned to leave the area in its natural state, omitting any attempt at lawns and gardens on the rocky terrain. Also, garages and utility buildings were not to be built on the plateau, but were to be built down below, entirely off the hill. The large and beautiful hardwood trees on the building site had great value to the Carys, both for their beauty and as a natural setting for their proposed home. The trees were of a size and grandeur which were in proportion to their plans for an elaborate and imposing home and surrounding estate. They were an asset to the building site. On September 21, 1938, a hurricane swept over Cannoo Hill and the surrounding property. The storm broke and uprooted 131 trees on the hilltop and about 200 trees on the western slope of the hill. All of these trees were killed. The trees which were blown over the hilltop were cut away from their stumps and removed, eventually. It was impracticable to remove the broken trees from the side of the hill. After the storm, 144 trees of from six to twenty-four inches in diameter remained *84 standing on the plateau. About one-third of the remaining trees were only six inches in diameter, and about twenty feet high. The storm hit the northeastern end of the five-acre plateau the most severely. In this area, about one-third of the area, according to a map, thirty-three trees were destroyed and none were left standing. The trees were six to fourteen inches in diameter. In the central area, about fifty-four trees were destroyed, and in the western area, about forty-four trees were destroyed. Sixteen hemlocks were destroyed, and one, only, survived. The oaks, pines, and maples were well thinned out. Of the 144 trees on the five-acre plateau which survived the hurricane, forty-three were twelve to twenty-four inches in diameter; and 101 trees were from six to ten inches in diameter. The following schedule shows the destruction and survival of the grove of 275 trees: Diameter in inches
Total
6
7
8
9
10
12
14
16
18
20
24
30
36
Trees destroyed
6
1
15
0
32
35
23
3
7
1
6
1
1
131
Trees remaining
standing
44
12
17
13
15
23
8
4
6
1
1
0
0
144
Total
275
*85 The Carys continued their plan to build a home on the hilltop after the hurricane. After 1938 Melbert Cary died. The house which was planned has not been built, to date. The Carys were not insured against damage from storm, and have not received any compensation for the loss of trees and other damage from the hurricane. As a result of the hurricane the desirability of the top of Cannoo Hill as a home site and the sale value of the property was materially lessened. The property of the petitioners was damaged by the hurricane in 1938 to the extent of not less than $30,000. Opinion Under section 23 (e) (3) of the Revenue Act of 1938, deduction is allowed to an individual taxpayer for loss of property not connected with his business where the loss is caused by storms or other casualty. In these proceedings, the respondent admits that the petitioners, the joint owners of certain real property, sustained loss of part of that property in 1938 from a storm, and that the loss results from the destruction of trees on the Bacon property on top of Cannoo Hill. Respondent has determined that loss was sustained in the amount of $2,000, and he has allowed each taxpayer a loss of $1,000, *86 separate returns having been filed. Petitioners claimed loss in the amount of $30,000; each petitioner claimed loss of $15,000 in his and her return. They now claim loss in the amount of $50,000 on the basis of evidence adduced at the trial of these proceedings. On brief, petitioners request that the ultimate finding of fact should be made that the property known as Cannoo Hill, comprising 1,670 acres, was damaged by the hurricane of September 21, 1938, to the extent of at least $50,000. The pleadings fail to raise the issue of the larger claim. The issue raised in each petition is based upon the allegation that the respondent erred in disallowing deduction of a storm loss in the amount of $14,000. Accordingly, our decision is limited to the assignment of error in each petition. The petitions were not amended. See Rule 17, our Rules of Practice. See M. C. Parrish & Co., 3 T.C. 119, 129; aff'd., 147 Fed. (2d) 284; Eugene Houdry, 7 T.C. 666. The issue presented is limited to the loss which resulted from the destruction of trees on Cannoo Hill. The evidence shows that the hurricane of September 21, 1938, caused other loss on the estate, but *87 that deductions were taken in the returns which could cover these losses, although the deductions were taken under some heading other than loss from storm. Petitioners recognize their failure to prove that they have not received deductions for other losses, relatively small ones, and limit their contentions on brief to the loss resulting from the destruction of trees. The parties are agreed that the damage done to petitioners' property by destruction of valuable trees gives rise to a loss for which deduction may be taken, and that the measure of the loss is the difference between the value of the property immediately before the casualty and the value immediately thereafter. See Helvering v. Owens, 305 U.S. 468; Whipple v. United States, 25 Fed. (2d) 520; Frederick H. Nash, 22 B.T.A. 482, and cases cited therein; G.C.M. 21013, C.B. 1939-1, p. 101. The dispute between the parties is, therefore, the amount of the loss. The question is one of fact. We are satisfied from the evidence that petitioners have proved that the value of the property after the storm decreased by at least $30,000. Loss in that amount is supported by the sworn *88 testimony of reputable expert witnesses - a real estate appraiser, a forest engineer, and a former commissioner of parks in the State of New York. These witnesses were qualified to express opinions on the value of property of the kind involved and to appraise damage from the loss of trees. Respondent did not undertake to rebut the testimony of these witness: he did not introduce any evidence. See Whipple v. United States, supra.We cannot disregard the evidence adduced by petitioners, and it stands without any controverting evidence. The testimony of the expert real estate appraiser shows that the hurricane decreased the value of the estate by at least $30,000; and the testimony of others shows that the cost of replacing trees necessary to restore the value of the building site to its value before the damage, to the extent that the damage could be repaired, would cost in excess of $30,000. Cf. Mary Cheney Davis, 16 B.T.A. 65, 68. Upon the evidence it has been found as a fact that the petitioners sustained a loss of not less than $30,000. We have observed, of course, that the loss which may be deducted is limited to the adjusted basis of the estate. *89 G.C.M. 21013, supra; Harry Johnston Grant, 30 B.T.A. 1028. The loss in the amount of $30,000 is less than the adjusted basis of the estate. Decisions will be entered under Rule 50.