BASALT ROCK CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10620. Promulgated April 14, 1948.

*Harry R. Horrow, Esq.,* for the petitioner.
*Leonard Raum, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge*: The respondent determined a deficiency of $583,-003.64 in the petitioner's excess profits tax liability for the year 1942. The petitioner claims an overpayment of excess profits tax in the sum of $935,575.38.

Several issues were raised in the pleadings, but all were settled by stipulation except one, viz.: Whether, for purposes of the so-called 80 per cent limitation provided in section 710 (a) (1) (B) of the Internal Revenue Code, the petitioner's surtax net income should be computed according to the percentage of completion method or on the completed contract method, the petitioner having kept its accounts and filed its income and declared value excess profits tax returns for 1942 as to long term contracts on the completed contract method, and having exercised the right of election granted by section 736 (b), Internal Revenue Code, to report income from long term contracts on the percentage of completion method.

The stipulated facts are adopted as our findings of fact. In so far as necessary to understand the issue, they are as follows:

The petitioner is a corporation, duly incorporated and existing under the laws of the State of California and engaged in the business of shipbuilding and manufacturing concrete aggregates, road and fuel oils, and building materials. The petitioner files its Federal income and excess profits tax returns on the calendar year basis. Its Federal corporation income and declared value excess profits tax returns, Form 1120, and its Federal excess profits tax return, Form 1121, for the calendar year 1942 were each filed with the collector of internal revenue for the first district of California.

During the year 1942, and prior and subsequent thereto, the petitioner entered into certain contracts, the performance of each of which required more than twelve months. Such contracts will hereinafter be termed long term contracts. The method of accounting regularly employed by the petitioner in keeping its books of account and in filing its Federal corporation income and declared value excess profits tax returns was the accrual method, except that with respect to the long term contracts the method of accounting regularly employed by the petitioner in keeping its books of account and in filing its Federal corporation income and declared value excess profits tax returns was the completed contract method as permitted by section 29.42–4 (b) of Regulations 111 and corresponding provisions of prior regulations. The petitioner filed its Federal corporation income and declared value excess profits tax return for the year 1942 in accordance with such methods of accounting.

At or prior to the time of filing its Federal excess profits tax return, Form 1121, for the year 1942, the petitioner exercised the election provided in section 736 (b) of the Internal Revenue Code, to com-

pute its income from long term contracts upon the percentage of completion method of accounting.

For the year 1942 the petitioner realized income from certain long term contracts and sustained losses from other long term contracts, determined on the percentage of completion method of accounting, resulting in a net income for the year 1942 from all of the petitioner's long term contracts, determined on such method of accounting, in the amount of $409,538.97.

The petitioner sustained losses for the year 1942 from long term contracts, determined on the completed contract method of accounting, in the amount of $889,898.02.

The petitioner's corporation surtax net income for the year 1942, for purposes of section 710 (a) (1) (B) of the Internal Revenue Code, exclusive of any income or loss from long term contracts and computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code, was $1,710,984.13, which, for purposes of section 710 (a) (1) (B) of the Internal Revenue Code, is to be adjusted to reflect the proper amount of income or loss for the year 1942 from long term contracts.

If the petitioner's corporation surtax net income for the year 1942, for purposes of section 710 (a) (1) (B) of the Internal Revenue Code, is to be determined by computing income or loss from long term contracts on the percentage of completion method of accounting, the corporation surtax net income for such purposes, computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code, is $2,120,523.10.

If the petitioner's corporation surtax net income for the year 1942, for purposes of section 710 (a) (1) (B) of the Internal Revenue Code, is to be determined by computing income or loss from long term contracts on the completed contract method of accounting, the corporation surtax net income for such purposes, computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code, is $821,086.11.

The petitioner's normal tax net income for the year 1942, for purposes of determining the petitioner's normal tax for the year 1942 imposed by chapter 1 of the Internal Revenue Code, and the petitioner's corporation surtax net income for the year 1942, for purposes of determining petitioner's surtax for the year 1942 imposed by chapter 1 of the Internal Revenue Code, each computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code, were each $821,086.11.

The petitioner's adjusted excess profits net income for the year 1942, determined by computing income or loss from long term contracts on the percentage of completion method of accounting, was $1,845,468.76.

The parties have stipulated that, if petitioner has an adjusted excess profits net income, determined by computing income or loss from long

term contracts on the completed contract method of accounting, such adjusted excess profits net income so determined is $546,031.77.

There was no increase attributable to contracts completed in 1942 in the petitioner's excess profits tax imposed for either 1940 or 1941 due to its exercise of the election provided in section 736 (b) of the Internal Revenue Code.

In its excess profits tax return for 1942 the petitioner showed an excess profits tax of $1,520,789.06. The petitioner claimed the right to defer payment of $251,790.53 under the provisions of section 710 (a) (5) of the Internal Revenue Code, and payment of such $251,790.53 was so deferred. In the excess profits tax return for 1942, the petitioner accordingly showed an excess profits tax payable of $1,268,998.53.

The petitioner's credit for income subject to the excess profits tax, provided in section 26 (e) of the Internal Revenue Code, which is allowable for the year 1942, is $546,031.77.

Petitioner's corporation surtax net income, computed without regard to the credit provided in section 26 (e) of the Internal Revenue Code for the taxable year ended December 31, 1942, for purposes of section 710 (a) (1) (B) of the Internal Revenue Code, is $2,120,523.10.

To recapitulate the facts briefly : In keeping its books of account and in filing its Federal income tax returns, the petitioner regularly employed, with respect to long term contracts, the completed contract method of accounting. Its 1942 corporation income and declared value excess profits tax return was filed in accordance with such regular method of accounting. In its 1942 excess profits tax return petitioner exercised its right of election under section 736 (b), Internal Revenue Code,[1] to report income from long term contracts on the percentage of completion method of accounting.

---

[1] SEC. 736. RELIEF FOR INSTALLMENT BASIS TAXPAYERS AND TAXPAYERS WITH INCOME FROM LONG-TERM CONTRACTS.

* * * * * * *

(b) ELECTION ON LONG-TERM CONTRACTS.—In the case of any taxpayer computing income from contracts the performance of which requires more than 12 months, if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, it may elect, in its return for such taxable year for the purposes of this subchapter [subchapter E—excess-profits tax], or in the case of a taxable year the return for which was filed prior to the date of the enactment of the Revenue Act of 1942, within 6 months after the date of the enactment of such Act, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, such income upon the percentage of completion method of accounting. Such election shall be made in accordance with such regulations and shall be irrevocable when once made and shall apply to all other contracts, past, present, or future, the performance of which required or requires more than 12 months. The net income of the taxpayer for each year prior to that with respect to which the election is made shall be adjusted for the purposes of this subchapter including the computation of excess profits net income in each taxable year of the base period under section 711 (b), to conform to such election but for the purposes of chapter 1, the tax imposed by this subchapter for any prior taxable year on account of the adjustment required by this subsection shall be considered a part of the tax imposed by this subchapter for the taxable year in which such income is, without regard to this subsection, includible in gross income. Income described in this subsection shall not be considered abnormal income under section 721.

There is no dispute as to the facts. All were stipulated. Nor is there any dispute that petitioner met the eligibility requirements and that it made an effective election as provided in section 736 (b). There is likewise no question as to the computation of the amount of the excess profits tax under section 710 (a) (1) (A), Internal Revenue Code,[2] or as to the amount of normal tax and surtax under chapter 1 for the year 1942, or as to the amount of the credit under section 26 (e) to which petitioner is entitled. The only amount in dispute is the amount of "the corporation surtax net income, computed under section 15" within the meaning of section 711 (a) (1) (B), Internal Revenue Code,[2] i. e., whether the amount of petitioner's surtax net income for purposes of the so-called 80 per cent limitation provided in section 710 (a) (1) (B) is $821,086.11, computed on the completed contract method of accounting, as contended by petitioner, or $2,120,523.10, computed on the percentage of completion method of accounting, as contended by respondent.

The respondent contends that his position represents the correct interpretation of the statute and is in accord with the applicable regulations. See Regulations 112, section 35.736 (b)–3, as amended by T. D. 5388, July 7, 1944 (1944 C. B. 387, 396), and in particular that part which is as follows:

The excess profits tax may be computed under section 710 (a) (1) (B) as an amount which when added to the normal tax and surtax computed under Chapter 1 for the taxable year equals 80 percent of the corporation surtax net income properly adjusted under the provisions of section 710 (a) (1) (B) applicable to such year.[3] For such purpose, the *corporation surtax net income shall be determined by computing the income from long-term contracts upon the percentage of completion method of accounting.* The credit for dividends received used in computing corporation surtax net income shall be limited to 85 percent of the net income determined by computing income from long-term contracts upon the percentage of completion method of accounting, and the normal tax and surtax shall be the actual normal tax and surtax determined under Chapter 1. [Emphasis supplied.]

[2] SEC. 710. IMPOSITION OF TAX.
 (a) IMPOSITION.—
 (1) GENERAL RULE.—There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits. net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax equal to whichever of the following amounts is the lesser:
 (A) 90 per centum of the adjusted excess-profits net income, or
 (B) an amount which when added to the tax imposed for the taxable year under Chapter 1 (other than section 102) equals 80 per centum of the corporation surtax net income, computed under section 15 or Supplement G, as the case may be, but without regard to the credit provided in section 26 (e) (relating to income subject to the tax imposed by this subchapter).
 [2] See footnote 2, *supra.*
 [3] Prior to the amendment by T. D. 5388 the first sentence of the quoted portion of section 35.736 (b)–3 read as follows:
 "The excess profits tax may be computed under section 710 (a) (1) (B) as an amount which when added to the normal tax and surtax computed under Chapter 1 equals 80 percent of the corporation surtax net income computed without regard to the credit under section 26 (e) (relating to income subject to excess profits tax)."

It is argued by petitioner that the term "the corporation surtax net income" denotes a specific concept and for any year can only be the precise amount arrived at under section 15 of chapter 1, Internal Revenue Code; that section 710 (a) (1) (B) in no way suggests a new concept of corporation surtax net income, but, on the contrary, that Congress by the use of the term "the corporation surtax net income," amplified by the phrase "computed under section 15" and the reference to "Chapter 1," indicated clearly that the 80 per cent limitation was to be based on the actual corporation surtax net income on which the corporation's surtax liability is imposed; that the only adjustment to corporation surtax net income permissible under section 710 (a) (1) (B) is the elimination of the credit under section 26 (e), relating to income subject to the excess profits tax; that section 710 (a) (1) (B) was intended to provide an alternative measure of the excess profits tax, independent of the measure of such tax under section 710 (a) (1) (A) ; that, instead of the 80 per cent limitation in terms of the actual corporation surtax net income, freed of any excess profits tax implications, as Congress intended, the Commissioner requires a reconstruction of the corporation surtax net income based on computations intended to apply only in the determination of adjusted excess profits net income; and that section 35.736 (b)-3 of Regulations 112 is invalid in so far as it provides that, when a taxpayer exercises the election under section 736 (b), the corporation surtax net income for the purposes of section 710 (a) (1) (B) shall be determined by computing the income from long term contracts on the percentage of completion method of accounting.

Section 15 (a) of the Internal Revenue Code provides that "For the purposes of this chapter, the term 'corporation surtax net income' means the net income" minus certain prescribed credits, including the section 26 (e) credit.[4] Section 21 defines "net income" as "gross income computed under section 22 less the deductions allowed by section 23." Section 41 provides as a "General Rule" that "net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." But obviously such a general rule is not necessarily applicable to special statute-created situations, and this is not a general situation coming under section 41 (which is in chapter 1), but a specific situation, under

---

[4] SEC. 15. SURTAX ON CORPORATIONS.

(a) CORPORATION SURTAX NET INCOME.—For the purposes of this chapter, the term "corporation surtax net income" means the net income minus the credit for income subject to the tax imposed by Subchapter E of Chapter 2 provided in section 26 (e) and minus the credit for dividends received provided in section 26 (b) (computed by limiting such credit to 85 per centum of the net income reduced by the credit for income subject to the tax imposed by Subchapter E of Chapter 2 in lieu of 85 per centum of the adjusted net income so reduced), and minus, in the case of a public utility, the credit for dividends paid on its preferred-stock provided in section 26 (h). For the purposes of this subsection dividends received on the preferred stock of a public utility shall be disregarded in computing the credit for dividends received provided in section 26 (b).

a different chapter, and involving a special and different tax and the manner of its computation. Moreover, the petitioner's true earnings are reflected by the percentage of completion basis of accounting. That was the desire of the petitioner in electing that method.

Section 710, Internal Revenue Code, imposes an excess profits tax of either 90 per cent of adjusted excess profits net income, or the difference between the chapter 1 tax and 80 per cent of "corporation surtax net income, computed under section 15." The crucial question here is as to the meaning in section 710 (a) (1) of the phrase "corporation surtax net income, computed under section 15." For the petitioner contends that the expression "corporation surtax net income, computed under section 15" is a definite statutory chapter 1 concept, so that, it is argued, the petitioner must compute the 80 per cent "limitation" by using the completed contract method of accounting which it had used in computing its income tax under chapter 1.

In our opinion such view is in error. In the first place it is contrary to the regulation which requires the petitioner to use the percentage of completion method of accounting, because of the election under section 736 (b) to use that method "for the purposes of this subchapter," i. e., subchapter E of chapter 2, the excess profits tax law. Section 736 (b) specially provides that the petitioner may elect to compute its income "in accordance with regulations prescribed by the Commissioner" upon the percentage of completion method; also, that the election shall be made in accordance with such regulations. The reason Congress so provided and twice left the matter to regulation obviously lay in the complexity of the excess profits statute, its interlocking with the income tax law, and the irrevocability of the election. Under such circumstances we should find, before declaring the regulation invalid, a very clear and positive invasion of the legislative power. Unless the regulation is invalid, the respondent must prevail. The regulation is not to be so held "unless unreasonable or inconsistent with the statute." *Fawcus Machine Co.* v. *United States*, 282 U. S. 375; and only for weighty reasons. *Brewster* v. *Gage*, 280 U. S. 327; *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496. Yet we find no reason for holding it to be invalid, and find it reasonable and consistent with the statute. There is clear consistency in requiring the petitioner to use the method of accounting which it had elected to use "for the purposes of this subchapter," that is, for excess profits tax purposes, in computing the imposition of such tax, in section 710. Indeed, the matter passes the point of consistency. The only reasonable interpretation of the statute, in our view, requires the use of the basis elected, for *every* purpose of subchapter E of chapter 2, and, therefore, requires its use in the computation and "limitation" so-called in section 710 (a) (1) (B). The petitioner agrees that the elected method is applicable to section 710 (a) (1) (A)—the 90 per cent tax.

Is it reasonable then to contend, contrary to the regulation, as petitioner does, that the elected method is inapplicable to the next subsection—which is just as integral a part of the excess profits subchapter as is subsection (A)? To say that the regulation is unreasonable or inconsistent with statute in requiring application of the elected method to both subsections seems to us impossible. On the contrary, it seems affirmatively provided by the text, which applies the elected method to the entire subchapter dealing with the excess profits tax. We think any other interpretation than that expressed in the regulation would be not only inconsistent with the statute, but in the face of its language and purpose. If there were more reason for questioning the interpretation than we find demonstrated by the petitioner, we should still uphold the regulation, unless it should be clearly shown to be contrary to or outside the statute. Clearly, we think, that showing is noticeably absent.

The effort to eliminate the regulations depends wholly on the words "corporation surtax net income, computed under section 15" in section 710 (a) (1) (B). That language does not clearly, or even inferentially, prohibit computing corporation surtax net income by beginning with income upon a percentage of completion basis as required by the regulation and as, *for excess profits tax purposes*, the taxpayer had elected to do. It would appear to require very plain language to dictate that an excess profits tax under chapter 2 be imposed by being limited to a percentage of chapter 1 income. Such plain language to the effect sought by the petitioner—invalidity of the regulation, we can not find in the above phrase.

Both the statute and the decided cases indicate that the elected method of accounting be consistently applied in dealing with excess profits taxes. Section 710 (b) requires that, once the percentage of completion method is elected, the taxpayer's net income for the base period years shall for excess profits tax purposes be adjusted to conform to the election. (Yet the taxpayer wishes to leave unadjusted, for such purpose, the "corporation surtax net income" for the taxable year itself and to let it be computed though for excess profits tax purposes, on the original completed contract method of accounting.) And in several cases we and Circuit Courts have insisted upon consistency. In *Mackin Corporation*, 7 T. C. 648; affd., 164 Fed. (2d) 527, the taxpayer, reporting for income tax purposes on the installment basis, elected under section 736 (a) to compute for excess profits tax purposes on the accrual basis. The effect of the decision is that, the accrual basis having been elected, it was controlling for excess profits tax purposes, and that a regulation denying deduction of certain bad debts accrued was invalid for excess profits tax purposes. In short, the accrual basis having been elected, it carried through. Thus it is seen that we denied validity to a regulation (Regulations 109, sec. 30.736 (a)–3, as amended

by T. D. 5257), which called for inconsistency in application of the elected method under section 736 (a), which is companion and co-subsection with 736 (b) here involved and is in nowise different in principle (section 736 (a) merely having to do with excess profits on elected accrual method instead of installment method, paralleling the completed contract method and percentage of completion method under section 736 (b)). The petitioner, however, here would have us now hold that a regulation requiring consistency in carrying through the use of the elected method is invalid. In *Hecht Co.*, 7 T. C. 643; affd., 163 Fed. (2d) 194, the point was the same and the conclusion the same as in *Mackin Corporation, supra.*

Again, in *Kimbrell's Home Furnishings, Inc.* v. *Commissioner*, 159 Fed. (2d) 608, reversing 7 T. C. 339, we see that the election is for all purposes of excess profits tax; for there the company, formerly computing under the installment basis, elected under section 736 (a) to use the accrual basis; and it was held that in figuring invested capital, that is, figuring the amount of accrued earnings and profits under section 718 (a) (4), the company was permitted to compute such income on profits (from collections) upon the accrual basis. (The court said: "Since the excess profits tax must be computed by determining the excess profits net income and deducting therefrom the excess profits tax credit, it would seem logical that the method used in determining one should be consistent with the method used in determining the other.") There the respondent had contended much as the petitioner does here, that the earnings should be figured, like the ordinary income, upon the installment basis.

*Commissioner* v. *South Texas Lumber Co., supra*, requires our conclusion above; for there a taxpayer, though using an accrual method, elected under section 44 (b), Internal Revenue Code, to report profits from installment sales on the installment method, and was required by Regulations 111, section 29.115–3, to use the elected method in computing earnings and profits. The Court upheld the regulation and held that the taxpayer was required to use the elected installment method in computing earnings and profits in the computation of equity invested capital under section 718 (a) (4). Not only did the Court again emphasize the necessity for sustaining regulations unless "unreasonable and plainly inconsistent with the revenue statutes and * * * except for weighty reasons," citing *Fawcus Machine Co.* v. *United States, supra*, but it stressed that it is "uniformly held" that the elected basis must be followed. The Court also pointed out that the fact that it is specifically provided by the statute that the installment basis was to be used "Under regulations prescribed by the Commissioner * * *" gives added reason why the regulation should not be overruled "unless clearly contrary to the will of Congress."

In fact, we have gone further than merely demanding consistency in the use of the elected method in purely excess profits tax cases, for in *West End Furniture Co.*, 6 T. C. 557, where a taxpayer elected under section 736 (a) to compute income on the accrual instead of its usual installment basis, we had the question whether, in computing income tax, credit for the amount of adjusted excess profits net income under section 26 (e) should be computed upon the elected accrual basis or the original installment basis; and we said that the elected accrual basis must be applied in computing that credit. So it is seen that the method elected for excess profits tax purposes must be applied for every excess profits tax purpose, even though it is only in computing the section 26 (e) credit in an ordinary income tax case. Nevertheless the petitioner wishes the use of the elected method curtailed within the excess profits tax subchapter; in effect, asks that the expression "for the purposes of this subchapter" in section 736 (b) be held not to cover a part of that subchapter, subsection (B) of section 710 (a) (1). The illogic is self-apparent.

As above seen, the effort to strike down the regulation requiring consistent use of the elected method of accounting, and to show error by the respondent, depends upon the expression "corporation surtax net income, computed under section 15" in section 710 (a) (1) (B), which petitioner contends contains such a specific concept that, though it had for all excess profits tax purposes elected to use the percentage of completion method of accounting, the completed contract method must here be used because section 15 is in chapter 1, covering income, in computing which the completed contract method had been used. But we notice immediately that section 15 says that "*For the purposes of this chapter*, the term 'corporation surtax net income' means \* \* \*." Pointedly, then, the concept or meaning is delimited to chapter 1, or income tax purposes. It is at least a fair inference from, if not plainly though indirectly expressed in, "For the purposes of this chapter, the term 'corporation surtax net income' means," etc., that for purposes of another chapter (such as subchapter E of chapter 2) the expression may mean something else. Surely, in another chapter and regarding a different tax, a different basis of accounting could be utilized in computing the corporation surtax net income. This alone would seem to preclude the conclusion sought by the petitioner, at least so far as saying that the regulation is invalid. With the meaning of corporation surtax net income as set out in section 15 (the petitioner's center of argument) confined to chapter 1 purposes, the regulation is discerned to be at least an altogether possible interpretation of the excess profits subchapter provision in section 736 (b).

But is it not plain (and to sustain the regulation it would need be only a reasonably arguable interpretation) that the above quoted

language from section 15 does not provide that the same method or basis of accounting be used in computing corporation surtax net income for the present excess profits tax purposes, as was used for income tax purposes? Beyond argument, that statement is not made in words (and the interpretation in the regulations infers otherwise). Had petitioner's view been that of the Congress, that body could easily have said in section 710 (a) (1) (B), that the 80 per cent limitation used in imposing excess profits tax was to be based on corporation surtax net income computed under the same method of accounting used in computing income tax." But, instead, it simply said "corporation surtax net income computed under section 15." But section 15, analyzed, merely provides that corporation surtax net income means (as we have seen, for the purposes of chapter 1) net income minus designated credits; and net income stems from income; and section 736 (b) permits a taxpayer to elect (irrevocably) to compute its *income* on the percentage of completion method. Thus it becomes clear that it is income with which section 15 starts computing corporation surtax net income (and that "such income" under section 736 (b) is computed upon a percentage of completion basis). Is the regulation, then, unreasonable and outside the statute in saying that the computation must be on percentage of completion? Does not the text of the statute, on the contrary, definitely provide for the use of the percentage of completion method when it requires that method to be used in computing the income which must be ascertained in order to even start the computation of corporation surtax net income? For it is to be noted that section 15 provides a mere computation—of corporation surtax net income—from net income by subtracting certain credits. And it is equally clear that section 710 (a) (1) (B) set the 80 per cent "limitation," upon corporation surtax net income, as *computed* under section 15. But it could have been computed even under section 15 under any one of several bases of accounting—cash, accrual, installment, completed contract, percentage of completion, etc. This demonstrates that the mere phrase "under section 15" does not designate the method of accounting to be used, most particularly when the corporation surtax net income being computed starts with income, which, for the excess profits tax purpose here involved, has been voluntarily placed on a percentage of completion basis, and where we are in fact computing the imposition of the excess profits tax. We compute under section 15, but the bookkeeping method is set for us by the election which placed under the percentage of completion method the income with which we started to compute under section 15. In *West End Furniture Co.*, *supra*, we said, considering the case of a taxpayer which had exercised the election provided in section 736 (a), that "It is thus im-

possible to escape the conclusion that the term 'normal-tax net income' as used in section 711 (a) does not, in and of itself, and in every case, mean the normal tax net income used for income tax purposes." Since "normal tax net income" referred to in section 711 (a) is only a step in arriving at corporation surtax net income, from income as a start, the case is authority that "income" for income tax chapter 1 purposes is not the same, and may be computed on an accounting principle different from that used in computing the excess profits tax, so that, in so computing, income and therefore corporation surtax net income, may, under the election, be computed on the percentage of completion basis, though for chapter 1 purposes income and corporation surtax net income had been computed on the completed contract method; and "corporation surtax net income" is seen to be no such specific concept as to demand in subchapter E of chapter 2 the use of the same accounting basis used in chapter 1—to say nothing of the above noted limitation of the phrase in section 15 to chapter 1 by the text of section 15.

Moreover, the petitioner's view rejects the use of elected basis income, because of a theory that section 15 (though it does not so state) requires use of ordinary chapter 1 net income and rejection of use of elected basis income; when, in fact, careful examination of section 15 reveals that it *actually requires use of the elected basis of income*, that is, in the words of section 710 (a) (1) (B), in truth requires that "corporation surtax net income, computed under section 15" be computed by use of the elected basis. For section 15 computes corporation surtax net income as net income, minus certain credits, the principal one being for dividends received; but it immediately limits that credit to 85 per cent of net income, *"reduced by the credit for income subject to the tax imposed by Subchapter E of Chapter 2."* So it is seen that "surtax net income, computed under section 15" *can not be computed* without taking into consideration, and reducing dividends paid credit by, adjusted excess profits net income under subchapter E. The petitioner agrees that adjusted excess profits net income is computed under the elected basis of accounting. Nevertheless, it eliminates that basis from section 15, though such basis is therein specifically utilized. It would appear remarkable and inconsistent to compute, under section 15, in part on one method and in part on another. We think that one method, the one elected, and actually used in computing the credit deducted in the computation in section 15, should be used throughout that section.

After much examination of this novel question, we come to the conclusion and hold that Regulations 112, section 35.736 (b)–3 as amended by T. D. 5388 is not invalid; and that the use of the elected percentage of completion method of accounting is not confined to subsection (A) of section 710 (a) (1), but must be applied under sub-

section (B) in imposing the excess profits tax in computing for excess profits tax purposes corporation surtax net income computed under section 15, and that the Commissioner did not err in so computing.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

VAN FOSSAN, *J.*, dissenting: It will at once be conceded that the instant case poses a difficult question and involves an intricate relationship of pertinent statutes. I can not avoid the feeling, however, that the prevailing opinion has made a hard problem harder and has added to the difficulty presented by the application of the statutes in question. Fortunately, there is no dispute as to the facts. All were stipulated. The posture of the parties with respect to the controversy is accurately stated in the majority opinion.

The respondent relies on his regulation, which provides (I believe contrary to the statute) "for such purpose, the corporation surtax net income shall be determined by computing the income from long term contracts upon the percentage of completion method of accounting."

The petitioner inveighs the mandate of the regulation and contends that there is no basis in law for requiring a recomputation of the corporation surtax net income as dictated by the regulation.

It is my judgment that petitioner is amply fortified in his contention that the term "corporation surtax net income" denotes a specific concept which for any year can be only the precise amount arrived at under section 15 of chapter 1 of the Internal Revenue Code, and that section 710 (a) (1) (B) in no way suggests a new concept of corporation surtax net income. On the contrary, Congress, by the use of the term "the corporation surtax net income," amplified by the phrase "computed under section 15" and the reference to "Chapter 1," indicated clearly that the 80 per cent limitation was to be based on the actual corporation surtax net income on which the corporation's surtax liability is imposed. In my judgment, section 710 (a) (1) (B) was calculated to provide an alternative measure of the excess profits tax independent of the measure of such tax under section 710 (a) (1) (A).

The majority correctly state that section 15 (a) of the code defines "corporation surtax net income" as "the net income" minus certain prescribed credits, including the section 26 (e) credit; that section 21 defines "net income" as "the gross income computed under section 22, less the deductions allowed by section 23," and that section 41 provides that generally "net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." These considerations are basic in the law. Thus "corporation surtax net income" as defined in the statutes is gross income computed under section 22, less the deductions allowed by

section 23, minus certain credits enumerated in section 15 (a), and all computed in accordance with the method of accounting regularly employed by the taxpayer in keeping its books. It seems to me perfectly clear that chapter 1 establishes a specific concept of corporation surtax net income and that this concept obtained in the present situation.

At this point the majority fall into inconsistency when they say that the general rule does not govern the present situation. They lean heavily on the regulation as authority, as though the regulation is sacrosanct. As a matter of fact, the whole question before us (and within our jurisdiction to decide) is the validity of the regulation. I do not agree that "the reason Congress so provided and twice left the matter to regulation obviously lay in the complexity of the excess profits statute, its interlocking with the income tax law and the irrevocability of the election." Although the statute nowhere suggests, and to my mind it clearly dictates the contrary, the majority conclude that "the only reasonable interpretation of the statute * * * requires the use of the basis elected for *every* purpose of Sub-chapter E of Chapter 2 * * *." They thus write out of the statute the provision "corporation surtax net income, computed under section 15," saying that this "language does not clearly, or even inferentially, prohibit computing corporation surtax net income by beginning with income upon a percentage of completion basis as required by the regulation * * *." I can not agree with such a negative approach to the question. The last quoted statement of the majority assumes the conclusion it seeks and clearly violates the statute.

The statement by the majority that "the petitioner's true earnings are reflected by the percentage of completion basis of accounting" is plainly erroneous. Its true earnings are those reflected in its income tax return, and for that purpose its method of accounting with respect to long term contracts was the completed contract method. It was not the desire of taxpayer and it made no election to change that method of accounting in so far as computing its "true earnings" was concerned. Its election was made only with reference to the excess profits net income. The true earnings of any taxpayer are reflected by computation thereof under the method of accounting regularly employed by it.

The stipulated amount contended to be applicable by petitioner reflects the income from long term contracts computed on the completed contract method of accounting, the method regularly employed by petitioner in keeping its books. Petitioner was required to use such method in arriving at its corporation surtax net income under section 15 (a) for the imposition of the surtax under section 15 (b). In fact, from the statement attached to the notice of deficiency, it appears that the Commissioner used the net income computed on the completed

contract method of accounting in determining petitioner's 1942 surtax. Section 710 (a) (1) (B) does·not purport to change the concept of corporation surtax net income established by chapter 1, nor does it require a computation of corporation surtax net income different from that required by chapter 1. In so far as applicable here, it permits only one adjustment to "the corporation surtax net income, computed under section 15," i. e., the elimination therefrom of the credit under section 26 (e).

The respondent concedes that neither section 710 (a) (1) (B) nor any other provision of the statutes specifically states that the election under section 736 (b) is applicable to the determination of corporation surtax net income. Had it been so intended, it could easily have been so stated.

The "tax imposed for the taxable year under Chapter 1" is likewise a factor under section 710 (a) (1) (B) in determining the amount of the excess profits tax. The income tax and surtax imposed under chapter 1 are also based upon income. Section 29.1–1, Regulations 111, states "The tax imposed by chapter 1 is upon income." If section 736 (b) requires all factors necessary to determine the amount of the excess profits tax which are based upon income to be computed on the percentage of completion method of accounting, that requirement would logically extend to the computation, on the same method of accounting, of the income upon which the income tax and surtax under chapter 1 are based. Moreover, section 35.736 (b)–3, Regulations 112, provides that in computing the excess profits tax under section 710 (a) (1) (B) "the normal tax and surtax shall be the actual normal tax and surtax determined under chapter 1," which means that the income upon which such taxes are based must be computed upon the completed contract method of accounting and not upon the percentage of completion method of accounting.

In my opinion, the election under section 736 (b) is applicable to the determination of excess profits net income for the purposes of section 710 (a) (1) (A) only and not to the determination of "corporation surtax net income." It is so stated in section 35.735 (b)–2 (c).

It is significant that chapter 1 provides for the computation and determination of corporation surtax net income, whereas subchapter E of chapter 2, which includes section 736 (b), provides for the computation and determination of adjusted excess profits net income. Section 710 (a) (1), although included in subchapter E of chapter 2, does not pertain to the computation of income of any kind, but merely provides two measures for the excess profits tax, the one being the adjusted excess profits net income and the other the corporation surtax net income without regard to the credit relating to the income subject to the excess profits tax less the tax imposed by chapter 1.

Without laboring the question further, it is my conclusion that

section 35.736 of Regulations 112, as amended by T. D. 5388, is invalid in so far as it requires that for the purpose of section 710 (a) (1) (B) "the corporation surtax net income shall be determined by computing the income from long term contracts upon the percentage of completion method of accounting." I therefore dissent.

ARUNDELL, BLACK, and JOHNSON, *JJ.*, agree with this dissent.

---

KERN, *J.*, dissenting: Since I am convinced that the result reached by the majority and the respondent's regulation upon the question presented by this case are in conflict with the pertinent statutory provisions, I must respectfully note my dissent.

Section 710 (a) of chapter 2 of the Internal Revenue Code imposes a tax upon the adjusted excess profits net income of every corporation. This tax may be computed under either section 710 (a) (1) (A) or section 710 (a) (1) (B), dependent upon which produces the lesser tax. If the tax is computed under section 710 (a) (1) (A), it will be "90 percentum of the adjusted excess-profits net income," and, in making the computations prerequisite to an ascertainment of what is the corporation's excess profits net income, it will be necessary to wind through the maze of novel and complicated concepts introduced into the Internal Revenue Code in 1940 by subchapter E of chapter 2. However, if the tax is computed under section 710 (a) (1) (B), the taxpayer will be dealing with familiar and comparatively simple concepts which it has already met in computing its corporation surtax under chapter 1.

In computing "Excess-Profits Net Income" as that phrase is used in chapter 2, subchapter E of the Internal Revenue Code, or the excess profits tax representing a percentage of excess profits net income (sec. 710 (a) (1) (A)), or a credit to be subtracted from net income taxable under chapter 1, which, by section 26 (e) is to be "an amount equal to * * * adjusted excess-profits net income," (a) and (b) of section 736 are to be applied to all steps requiring the ascertainment and use of "net income" as a factor in the determination of "excess-profits net income" under chapter 2, since otherwise neither a correct nor a realistic figure for "excess-profits net income" can be obtained. This would be true of any computations starting with section 710 (a) (1) (A). See *West End Furniture Co.*, 6 T. C. 557.

However, section 710 (a) (1) (B) does not require a computation of a tax representing a percentage of excess profits net income. It provides a substitute for a tax thus computed and is written in the familiar terms of chapter 1. Regardless of the amount of excess profits net income or the tax representing a percentage thereof, if a lesser amount would result from subtracting the amount of the tax

imposed by chapter 1 from an amount equal to 80 per cent of the corporation surtax net income computed under section 15 of chapter 1, then that lesser amount shall be the excess profits tax. The only way in which section 710 (a) (1) (A) affects the computation of the amount of tax under section 710 (a) (1) (B) is to assure the taxpayer that it is paying a lesser amount of tax under section 710 (a) (1) (B) than it would have paid had its tax been computed under section 710 (a) (1) (A). Only to the extent of thus protecting a taxpayer is any calculation of "excess-profits net income" necessary in computing excess profits tax under section 710 (a) (1) (B).

Regardless of whether the "excess-profits net income" of petitioner be computed on the completed contract method or the percentage of completion method, if 90 per cent thereof is greater than the "amount which when added to the tax imposed * * * under chapter 1 * * * equals 80 per centum of the corporation surtax net income computed under section 15 * * *," then the latter and lesser amount shall be petitioner's excess profits tax.

Only in section 710 (a) (1) (B) does the term "corporation surtax net income" appear in chapter 2, subchapter E. In none of the computations necessary under this subchapter to arrive at the "excess profits net income" upon which the excess profits tax is calculated under section 710 (a) (1) (A) is this term used. In none of the computations is it pertinent. It is used in the section which provides a substitute for and a limitation on the tax computed by the complicated method starting with section 710 (a) (1) (A) and requiring the ascertainment and use of "excess-profits net income."

In my opinion section 710 (a) (1) (B), in using the words and figures "80 per centum of the corporation surtax net income, computed under section 15," means exactly what it says and should not be construed to read "80 per centum of the corporation surtax net income, computed under section 15 and/or section 736 (b) of subchapter E of chapter 2."

ARUNDELL and BLACK, *JJ*., agree with this dissent.