ARTHUR L. LAWRENCE AND ALMA P. LAWRENCE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53929. Filed January 25, 1957.

*Brockman Adams, Esq.*, for the petitioners.
*John Potts Barnes, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $2,931.14 in the income tax of the petitioners for 1948. The facts have been stipulated. The stipulation is adopted as the findings of fact.

The petitioners, husband and wife, filed a joint Federal income tax return for 1948 with the collector of internal revenue, Los Angeles, California, on May 31, 1949, an extension to that date for filing having been granted. The notice of deficiency was not mailed until May 10, 1954, after the 3-year period, and after the 4-year period but before the 5-year period for assessment and collection had expired. The only question for decision is whether section 275 (c) applies, giving the Commissioner 5 years from the filing of the return within which to assess and collect the deficiency now admitted to be due.

Section 275 (c) is as follows:

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment. at any time within 5 years after the return was filed.

The petitioners have admitted that the deficiency determined by the Commissioner is correct. The Commissioner, in determining that deficiency, included in income over $20,000 of capital gain which the petitioners had omitted from gross income on their return. It was

not included in the computation of gross income on the return. Even the taxable one-half of that amount is substantially "in excess of 25 per centum of the amount of gross income stated in the return." The petitioners do not contend otherwise.

The petitioners contend that they disclosed the nature and amount of the now admitted additional income in a manner adequate to apprise the Commissioner in a statement made a part of the return. Arthur acquired a portion of the stock of Midway Peerless Oil Company in 1942 and that company was liquidated on December 15, 1948. The liquidation resulted in the capital gain now determined by the Commissioner and agreed to by the petitioners. The petitioners reported on their return a long-term capital gain of $8,567.38, one item of the computation of which was as follows:

| Kind of property | Date acquired | Date sold | Gross sales price | Cost or other basis |
|---|---|---|---|---|
| 211 Sh. Midway Peerless Oil Co.— | | | | |
| Com | 4/7/42 | 12/24/48 | $10,539.71 | (A) $1,899.90 |

(A) See schedule attached.

The following appeared as a separate page of the return:

SCHEDULE D
NOTE A

ARTHUR L. LAWRENCE AND ALMA P. LAWRENCE
5818¼ MARMION WAY, LOS ANGELES 42, CALIFORNIA
FORM 1040—INDIVIDUAL INCOME TAX RETURN
COMPUTATION OF GAIN ON LIQUIDATION OF MIDWAY PEERLESS OIL COMPANY

| Item | Description | Value of assets distributed—Estimated 12/15/48 (Basis for Form 1099L) | | Value of assets distributed—Revised appraisal | |
|---|---|---|---|---|---|
| | | Total | Share of A. L. Lawrence (4.3421%) | Total | Share of A. L. Lawrence (4.3421%) |
| 1 | Lease | $573,420.78 | $24,898.47 | $448,726.99 | $19,484.15 |
| 2 | Leasehold equipment | 34,713.00 | 1,507.27 | 34,713.00 | 1,507.27 |
| 3 | Buildings—employee cottages | | | 3,370.00 | 146.33 |
| 4 | Inventories: | | | | |
| | (a) Crude oil on hand 12/15/48 | 1,911.40 | 83.00 | 1,911.40 | 83.00 |
| | (b) Materials and supplies | 142.39 | 6.18 | 142.39 | 6.18 |
| | | $610,187.57 | $26,494.92 | $488,863.78 | $21,226.93 |
| 5 | Cash and other assets | 204,650.38 | 8,886.11 | 204,650.38 | 8,886.11 |
| | Totals | $814,837.95 | $35,381.03 | $693,514.16 | $30,113.04 |

Item 1—Lease is not readily marketable and has no ascertainable market value. Based upon the decision Agnes F. Smith, Plaintiff v. Harry C. Westover, Defendant 48-2 USTC par. 9351, affirmed by the United States Court of Appeals for the Ninth Circuit 173 Fed. (2d) 91 based upon the decision of the Supreme Court of the United States in Burnet v. Logan (X-1 CB 345), future payments will be returned as capital gains if and when received.
Item 4—Part of lease, see item 1, above.

*Computation of Value Received During 1948 by Arthur L. Lawrence*

| | |
|---|---|
| Cash received (item 5, above) | $8,886.11 |
| Leasehold equipment (item 2, above) | 1,507.27 |
| Buildings—employee cottages (item 3, above) | 146.33 |
| Total value received in 1948—Schedule D of return | $10,539.71 |
| Basis of stock—Schedule D of return | 1,899.90 |
| Realized long-term gain—calendar year 1948 | $8,639.81 |

It is obvious from the entire return that the taxpayers made a computation of their income and omitted "from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." The quoted words are from section 275 (c) which first appeared in the Revenue Act of 1934. The House bill had eliminated the statute of limitations in such cases but the Senate insisted upon a 5-year period, saying:

For instance, a case might arise where a taxpayer failed to report a dividend because he was erroneously advised by the officers of the corporation that it was paid out of capital or he might report as income for one year an item of income which properly belonged in another year. Accordingly, your committee has provided for a 5-year statute in such cases. * * * [1939–1 C. B. (Part 2) 619.]

The Tax Court can only apply the statute as Congress enacted it, and it has consistently held under similar circumstances that the 5-year period of limitations on assessment and collection applies rather than any shorter period, regardless of how honest the mistake and regardless of the possibility that from somewhere in the return or papers attached to it the information was given to the Commissioner of the transaction giving rise to the omitted income. *Anna M. B. Foster*, 45 B. T. A. 126, affd. 131 F. 2d 405; *Emma B. Maloy*, 45 B. T. A. 1104; *Estate of C. P. Hale*, 1 T. C. 121; *American Liberty Oil Co.*, 1 T. C. 386; *William L. E. O'Bryan*, 1 T. C. 1137; *Katharine C. Ketcham*, 2 T. C. 159, affd. (C. A. 2) 142 F. 2d 996; *Oleta A. Ewald*, 2 T. C. 384, affd. 141 F. 2d 750; *M. C. Parrish & Co.*, 3 T. C. 119, affd. 147 F. 2d 284; *Leslie H. Green*, 7 T. C. 263, 275; *Peyton G. Nevitt*, 20 T. C. 318; *H. Leslie Leas*, 23 T. C. 1058; *Dean Babbitt*, 23 T. C. 850; *Colony, Inc.*, 26 T. C. 30.

The position taken by the petitioners in this case has now been enacted into law by section 6501 (e) (1) (A) (ii) of the Internal Revenue Code of 1954, as follows:

In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

This provision was not made retroactive and its legislative history states that it was a "change from existing law," thus supporting the view consistently taken by the Tax Court as to the previously existing law. H. Rept. No. 1337, 83d Cong., 2d Sess., p. A414; S. Rept. No. 1622, 83d Cong., 2d Sess., p. 584. The court in *Slaff* v. *Commissioner*, 220 F. 2d 65, 67, recognized that this legislation changed existing law.

This Court has also held that an omission within the meaning of section 275 (c) could result from the overstatement of cost or a similar item, even though there was no omission of an income item from the computation of income shown on the return. *Estate of J. W. Gibbs*,

*Sr.*, 21 T. C. 443. The present situation is not such an omission and the fact that the Tax Court has been reversed in several cases of that type and affirmed in one does not help the present taxpayer. *Uptegrove Lumber Co.* v. *Commissioner*, 204 F. 2d 570; *Deakman-Wells Co.* v. *Commissioner*, 213 F. 2d 894, reversing 20 T. C. 610; *Goodenow* v. *Commissioner*, 238 F. 2d 20, reversing 25 T. C. 1; *Reis* v. *Commissioner*, 142 F. 2d 900, affirming 1 T. C. 9 and a Memorandum Opinion of this Court filed June 4, 1943. The Court of Appeals for the Third Circuit, in the *Uptegrove* case, considered section 275 (c) ambiguous insofar as it applied to an omission resulting from the overstatement of cost, but it clearly differentiated that kind of an omission from one, such as is here present, where the taxpayer "leaves some item of gain out of his computation of gross income." It distinguished cases of the latter type "because the applicability of the language of the statute, 'omits from gross income', to the given facts was so clear."

The only possible complication in the decision of the present case is whether it might be contrary to a fairly recent decision of the Court of Appeals for the Ninth Circuit, to which this case could go on appeal. The reference is to the *Slaff* case, *supra*. There, Slaff entered only one item, salary, on each of his returns. No computation of any kind was shown. After the one income item, reported in the place for income received, he wrote, "exempt under Section 116 I. R. C.; therefore no taxable income." The Tax Court held that there was a complete omission of "gross taxable income" and section 275 (c) applied. The Court of Appeals reversed but stated, "[w]e are in full accord with the rulings in" the *Uptegrove* and *Deakman-Wells* cases, *supra*, in which the opinions indicate agreement with the Tax Court in a case like the present one. See also *Goodenow*, *supra*. If the views of the Court of Appeals for the Ninth Circuit are the same as those of the Court of Appeals for the Third Circuit, there is no difficulty here, but if it does not distinguish this case from its *Slaff* case, then, even so, the Tax Court must respectfully adhere to its own views in this case.

One of the difficult problems which confronted the Tax Court, soon after it was created in 1926 as the Board of Tax Appeals, was what to do when an issue came before it again after a Court of Appeals had reversed its prior decision on that point. Clearly, it must thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, the obvious procedure is to follow the higher court. But if still of the opinion that its original result was right,[1] a court of national jurisdiction to avoid confusion should follow its own honest beliefs until the Supreme Court decides

---

[1] If the issue turned upon a rule of law peculiar to some State or States within that circuit, the practice of the Tax Court has been to follow the rule as laid down for that circuit.

the point.[2] The Tax Court early concluded that it should decide all cases as it thought right.

This was not too difficult if appeal in the later case would not lie to the reversing circuit. *Missouri Pacific Railroad Co.*, 22 B. T. A. 267, 287, which followed *Western Maryland Railway Co.*, 12 B. T. A. 889, after that case had been reversed, (C. A. 4) 33 F. 2d 695. The difficulty increased when the Tax Court adhered to its own opinion when appeal would lie to the reversing circuit. *Southern Railway Co.*, 27 B. T. A. 673, 688, affirmed on the bond discount issue (C. A. 4) 74 F. 2d 887; *Estate of Edward P. Hughes*, 7 T. C. 1348, 1350; *Harold Holt*, 23 T. C. 469, 473. The pressure increased in situations where more than one Court of Appeals differed with the Tax Court, but was relieved if one or more agreed with the Tax Court. *Robert L. Smith*, 6 T. C. 255, 257. Cf. *Putnam* v. *Commissioner*, 352 U. S. 82. The Court of Appeals for the Eighth Circuit in that case affirmed a Memorandum Opinion of this Court (T. C. Memo. 1954–37), 224 F. 2d 947. The Supreme Court affirmed, after granting certiorari, because of alleged conflict with *Pollak* v. *Commissioner*, (C. A. 3) 209 F. 2d 57, reversing 20 T. C. 376; *Edwards* v. *Allen*, (C. A. 5) 216 F. 2d 794; *Cudlip* v. *Commissioner*, (C. A. 6) 220 F. 2d 565, reversing a Memorandum Opinion of this Court dated Nov. 10, 1953. See also *Basalt Rock Co.*, 10 T. C. 600, revd. (C. A. 9) 180 F. 2d 281, certiorari denied 339 U. S. 966, and *Sokol ·Bros. Furniture Co.* v. *Commissioner*, (C. A. 5) 185 F. 2d 222, affirming a Memorandum Opinion of this Court dated Mar. 10, 1949, which had followed 10 T. C. 600, certiorari denied 340 U. S. 952. Several Courts of Appeals have affirmed the Tax Court on the point decided in the present case.

The Tax Court and its individual Judges have always had respect for the 11 Courts of Appeals, have had no desire to ignore or lightly regard any decisions of those courts, and have carefully considered all suggestions of those courts. The Tax Court not infrequently has been persuaded by the reasoning of opinions of those courts to change its views on various questions being litigated. Cf. *Estate of William E. Edmonds*, 16 T. C. 110; *Albert L. Rowan*, 22 T. C. 865; *James M. McDonald*, 23 T. C. 1091; *Mills, Inc.*, 27 T. C. 635.

This change of position sometimes backfires. The Tax Court, in *Wm. J. Lemp Brewing Co.*, 18 T. C. 586, abandoned its decision on an issue in the face of reversals and disagreements on the part of Courts of Appeals for the Second and Eighth Circuits and the District of Columbia. It followed its new position on that point in *De Soto Securities Co.*, 25 T. C. 175, but was reversed by the Court of Appeals for the Seventh Circuit, 235 F. 2d 409. Again, the Tax

---

[2] The United States Customs Court and the Court of Claims are other national courts operating on the trial court level, but they do not have similar problems since the appeals in each case go to an appellate court which also has a nationwide jurisdiction.

Court, five Judges dissenting, in *Burrus Mills, Inc.*, 22 T. C. 881, after being reversed on the point involved therein by the Courts of Appeals for the Second, Seventh, Third, and Sixth Circuits, concluded that it would have to follow those courts, but later, in a case coming from the Court of Claims, the Supreme Court of the United States decided the point as the Tax Court had originally decided it. *United States v. Anderson, Clayton & Co.*, 350 U. S. 55. The Tax Court is not indifferent to the fact that a Court of Appeals has taken exception to its failure to follow a decision of that court. Cf. *Stacey Mfg. Co.*, v. *Commissioner*, 237 F. 2d 605. It repeatedly indicates in its opinions that it takes such action reluctantly and only because, after thorough re-examination, it cannot agree with the particular holding involved.

The Tax Court has always believed that Congress intended it to decide all cases uniformly, regardless of where, in its nationwide jurisdiction, they may arise, and that it could not perform its assigned functions properly were it to decide one case one way and another differently merely because appeals in such cases might go to different Courts of Appeals. Congress, in the case of the Tax Court, "inverted the triangle" so that from a single national jurisdiction, the Tax Court appeals would spread out among 11 Courts of Appeals, each for a different circuit or portion of the United States. Congress faced the problem in the beginning as to whether the Tax Court jurisdiction and approach was to be local or nationwide and made it nationwide. Congress expected the Tax Court to set precedents for the uniform application of the tax laws, insofar as it would be able to do that. Hearings Before Ways and Means Committee, Revenue Act of 1926, pp. 10, 869, 878, 911, 926, 932; H. Rept. No. 1, 69th Cong., 1st Sess., pp. 17–19; 67 Cong. Rec. 1136–7, 3749 (1925).

The Tax Court feels that it is adequately supported in this belief not only by the creating legislation and legislative history but by other circumstances as well. The Tax Court never knows, when it decides a case, where any subsequent appeal from that decision may go, or whether there will be an appeal. It usually, but not always, knows where the return of a taxpayer was filed and, therefore, the circuit to which an appeal could go, but the law permits the parties in all cases to appeal by mutual agreement to any Court of Appeals. Sec. 7482 (b) (2), I. R. C. 1954. Furthermore, it frequently happens that a decision of the Tax Court is appealable to two or even more Courts of Appeals. A few examples will illustrate. A corporation, having stockholders scattered over the United States, makes a distribution to all. The Commissioner holds it taxable as a dividend from accumulated earnings. The stockholders join in a trial before the Tax Court which decides the issue as to all petitioning stockholders, contrary to a decision of Court of Appeals A, which reversed a prior Tax Court decision, but perhaps in line with an affirming decision of Court of

Appeals B. Cf. *Edwin L. Wiegand*, 14 T. C. 136, revd. (C. A. 7) 189 F. 2d 167, affd. (C. A. 3, June 26, 1953, unreported), later reversed (C. A. 3) 194 F. 2d 479. If it had rendered a separate different decision for those stockholders in Circuit A, what amount of accumulated earnings would remain for future distribution? Another situation was presented by the Richmond Hosiery Mills. That corporation filed its corporate returns for 3 years with the collector of internal revenue for the district of Georgia and for 1 intermediate year with the collector of internal revenue for the district of Tennessee. It received one notice of deficiency and filed a single petition in the Tax Court, each covering all 4 years. The Tax Court decided the case for all 4 years in a Memorandum Opinion and entered but one decision in the proceeding. The taxpayer took appeals to the Courts of Appeals for both the Fifth Circuit and the Sixth Circuit, in the former as to 3 of the years and in the latter as to a single year. The Sixth Circuit, in *Richmond Hosiery Mills* v. *Commissioner*, 237 F. 2d 605, a companion case with *Stacey Mfg. Co.*, *supra*, followed its own prior decision in *Owensboro Wagon Co.* v. *Commissioner*, 209 F. 2d 617, reversing 18 T. C. 1107, while the Fifth Circuit, which had not previously passed on this question, in *Richmond Hosiery Mills* v. *Commissioner*, 233 F. 2d 908, adopted the view of the Sixth Circuit as expressed in the *Owensboro* case. Or suppose partners live in different circuits. Are the decisions of the Tax Court as to them to vary accordingly? See *Choate* v. *Commissioner*, 324 U. S. 1, in which the appeal in the case of Hogan was taken to the Fifth Circuit which affirmed the Tax Court, *Hogan* v. *Commissioner*, 141 F. 2d 92, and the appeal in the case of Choate was to the Tenth Circuit which reversed the Tax Court, *Choate* v. *Commissioner*, 141 F. 2d 641, which was then reversed by the Supreme Court, thus affirming the Tax Court. Many more similar examples could be given. There is also the sometimes difficult problem of knowing from prior decisions of the appellate court precisely what its attitude is in relation to the current question before the Tax Court (cf. *Estate of Catherine Cox Blackburn*, 11 T. C. 623, modified 180 F. 2d 952), particularly where it has more than one decision outstanding and each may seem to have a bearing but they are not too easily reconciled. The *Slaff* case already discussed is another example.

The Commissioner of Internal Revenue, who has the duty of administering the taxing statutes of the United States throughout the Nation, is required to apply these statutes uniformly, as he construes them. The Tax Court, being a tribunal with national jurisdiction over litigation involving the interpretation of Federal taxing statutes which may come to it from all parts of the country, has a similar obligation to apply with uniformity its interpretation of those statutes.

That is the way it has always seen its statutory duty and, with all due respect to the Courts of Appeals, it cannot conscientiously change unless Congress or the Supreme Court so directs.

The taxpayers also argue that the Commissioner had only 4 years instead of 5 years within which to send out the notice of deficiency on which he could then assess and collect the tax. Section 275 (e) on which they rely provides for a 4-year period of limitations "[i]f the taxpayer omits from gross income an amount properly includible therein under section 115 (c) as an amount distributed in liquidation of a corporation, * * *." Congress thereby gave an extra year to the Commissioner over the general 3-year period if the omission was of the kind described therein, but Congress gave the Commissioner 2 extra years if the omission was of the kind described in section 275 (c). The two subsections overlap to some extent but since the omission here is of the kind described in section 275 (c), it is immaterial whether or not it might also qualify for the lesser period allowed by section 275 (e). There is nothing in the statute or its legislative history to indicate that if a particular omission was of the kind which came within both of these sections the Commissioner would be limited to the shorter period. See *Estate of Arthur T. Marix*, 15 T. C. 819, 825. The statute of limitations is not a bar to the assessment and collection of the deficiency in the present proceeding.

Reviewed by the Court.

*Decision will be entered for the respondent.*